WENDY J. OLSON, IDAHO STATE BAR NO. 7634
UNITED STATES ATTORNEY
**JOSHUA D. HURWIT, IDAHO STATE BAR NO. 9527**
**CHRISTINE G. ENGLAND, CALIFORNIA STATE BAR NO. 261501**
**ASSISTANTS UNITED STATES ATTORNEY**
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1414
Email: Joshua.Hurwit@usdoj.gov; Christine.England@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| WILDEARTH GUARDIANS, CASCADIA WILDLANDS, BOULDER-WHITE CLOUDS COUNCIL, KOOTENAI ENVIRONMENTAL ALLIANCE, PREDATOR DEFENSE, CENTER FOR BIOLOGICAL DIVERSITY, WESTERN WATERSHEDS PROJECT AND PROJECT COYOTE, <br><br>           Plaintiffs, <br><br>     v. <br><br> JOE KRAAYENBRINK, in his official capacity; UNITED STATES BUREAU OF LAND MANAGEMENT, a federal agency; CHARLES A. MARK, in his official capacity; and UNITED STATES FOREST SERVICE, a federal agency, <br><br>           Defendants. | Case No. 4:14-CV-00488-REB <br><br> **GOVERNMENT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER** |

## INTRODUCTION

The Government opposes Plaintiffs' broad Motion for a Protective Order (ECF No. 33) ("Plaintiffs' Discovery Motion" or "Motion"), which seeks protection from *all document discovery*, over two months after this Court ordered that discovery should proceed on *res judicata*. The Government asks the Court to (1) deny Plaintiffs' motion; (2) compel Plaintiffs to produce documents responsive to Defendants' requests under an appropriately narrow protective order, addressing Plaintiffs' confidentiality concerns and (3) extend the discovery deadline due to Plaintiffs' delay.

On March 30, 2015, the Court allowed discovery to proceed in this Action on the issue of *res judicata*. The Court directed Plaintiffs to seek a protective order if they objected "to any materials being sought." Plaintiffs delayed for two months and filed a motion for a protective order on June 5. Plaintiffs' untimely attempt to avoid discovery should be rejected.

Plaintiffs seek to shirk their discovery obligations by arguing (1) that the Government's *res judicata* defense is not viable and (2) that the First Amendment shields Plaintiffs from participating in document discovery. Neither of these arguments supports Plaintiffs' untimely motion. First, even if the Government's *res judicata* defense was not applicable (which it is) and even if the Court had not already ordered that discovery proceed (which it has), discovery would still be appropriate. Discovery is liberally allowed to give a defendant the opportunity to prove its defenses. Second, the First Amendment does not preclude the discovery Government's discovery. The Government's narrowly tailored discovery supports a compelling governmental interest: defending this lawsuit and avoiding duplicative lawsuits. Consequently, this Court need not grant last-minute relief from discovery. Instead, it can adequately address Plaintiffs' alleged First Amendment concerns with an appropriate order governing confidentiality.

**GOVERNMENT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 1**

## BACKGROUND

### A.     Procedural History

In 2013, a non-profit hunting organization called Idaho for Wildlife sponsored a "Coyote and Wolf Derby" in Salmon, Idaho (the "2013 Derby").  *WildEarth Guardians, et al. v. Mark, et al.,* 13-CV-533, ECF No. 23, Mem. Decision and Order at 2 (D. Idaho, Dec. 27, 2013).  The 2013 Derby awarded prizes for hunters who had taken wolves and coyotes during a specified time period.  *Id.*  Idaho for Wildlife indicated that hunting could place on National Forest, BLM, and private lands, but it did not control or limit where hunting by contestants could take place. *Id.*  The Forest Service determined that there were no activities associated with the 2013 Derby that required a Special Use Permit from the Forest Service. *Id.* at 3-4.

In December 2013, four of the plaintiffs in this Action[1] sought a temporary restraining order to prohibit the Forest Service from allowing the 2013 Derby to occur on National Forest land without a Special Use Permit (the "First Lawsuit").  *Id.* at 2.  Judge Candy Dale denied their motion for a temporary restraining order, finding that the Forest Service regulations did not require a Special Use Permit.  *Id.* at 7.

In 2015, Idaho for Wildlife sponsored a second hunting contest in Salmon (the "2015 Derby").  The Forest Service again determined that none of the activities associated with the 2015 Derby required a Special Use Permit. Compl. ¶ 55.  The 2013 Plaintiffs again challenge the Forest Service's determination that no Special Use Permit was required.  Compl. ¶ 4.  However, four new Plaintiffs have joined the second lawsuit.[2]

---

[1]     WildEarth Guardians, Project Coyote, Western Watersheds Project and Boulder-White Clouds Council (together, the "2013 Plaintiffs").

[2]     Cascadia Wildlands, Kootenai Environmental Alliance, Predator Defense and Center for Biological Diversity (together, the "New Plaintiffs").

**GOVERNMENT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 2**

B.      **Plaintiffs' Discovery Conduct**

Given the overlapping nature of the First Lawsuit and this Action, the Government sought to take discovery regarding a *res judicata* defense.  This Court agreed and issued an order on March 30, 2015 allowing discovery on the issue of *res judicata*.  ECF No. 28 at 2.

The Government promptly served discovery on April 3, 2015, including Requests for Admission, Requests for Production, and Interrogatories.  Hurwit Decl. at ¶ 4.  Through a lengthy meet and confer process, the Government agreed to narrow its requests, and the Plaintiffs agreed to provide discovery responses by May 25, "while aiming for as early as practicable."  *Id.* at ¶ ¶ 7-13.  The Government not only narrowed its existing requests, but also withdrew many of its requests.  *Id.* at ¶ 12-13.  As to each Plaintiff, the Government withdrew its Requests for Admissions, four Interrogatories, and ten Requests for Production.  *Id.* at ¶ 12.  The Government served narrowed requests on May 13.  *Id.* at ¶ 15.

On June 3, 2015, Plaintiffs finally served their discovery responses.  Hurwit Decl. at ¶ 19. Plaintiffs answered the Government's interrogatories but did not provide responses to any of the Government's eight outstanding requests for production.  Instead, they sent a letter refusing to produce any documents.  England Decl. at ¶ 19.  Before their June 3 letter, Plaintiffs' counsel never indicated that they would refuse to produce documents.  Hurwit Decl. at ¶ 21; England Decl. at ¶ 10.

For the first time, on May 19, Plaintiffs communicated their concern that any discovery material (including responses to interrogatories) produced by Plaintiffs should be protected as confidential.  Hurwit Decl. at ¶ 16.  On May 22, Plaintiffs proposed a stipulation requiring that (1) before Defendants could file any discovery material, they would provide Plaintiffs with two weeks' notice to allow Plaintiffs to seek protection from the Court; and (2) within 30 days after receiving notice of the entry of an order, Defendants would return or destroy all discovery

**GOVERNMENT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 3**

material.  Hurwit Decl. at ¶ 16.  On May 22, the Government explained that while it was amenable to a protective order, the Plaintiffs' proposal unfairly shifted the burden of protecting confidential information to the Government by effectively shortening the Government's briefing deadlines by two weeks (by requiring it to seek permission to use documents in advance of its filing deadlines).  England Decl. at ¶ 8.  On May 22, the Government proposed that the parties enter a stipulated protective order mirroring that entered by the court in *Pesky v. United States*, No. 10-CV-186-BLW, 2010 WL 4174670 (D. Idaho Oct. 19, 2010).  *Id.*  Counsel for Plaintiffs refused to agree to an order similar to that in *Pesky* because she was concerned that Plaintiffs could not meet the high burden of filing documents under seal.  *Id.* at ¶ 12.

## ARGUMENT

Plaintiffs' untimely discovery motion misunderstands the purpose and scope of discovery.  Plaintiffs primarily argue that "discovery is futile because *res judicata* is inapplicable."  Motion at 7-16. But even if Plaintiffs were correct that *res judicata* is not applicable, that is not a basis to deny discovery:  The federal rules allow discovery into any relevant defense, *even if* the opposing party argues that a particular defense is insufficient.  The sufficiency of the Government's defense should be decided on summary judgment—not Plaintiffs' discovery motion.  In any event, *res judicata* is applicable to some of the issues in this Action because such issues were finally decided in the First Lawsuit.

Plaintiffs also argue that the First Amendment bars any discovery related to the issue of *res judicata*.  But the First Amendment does not shield Plaintiffs from all document discovery.  As an initial matter, the Government has a compelling interest in asserting its *res judicata* defense and avoiding duplicative lawsuits.  That defense requires the narrowly tailored discovery propounded by the Government.  Plaintiffs' confidentiality concerns can be adequately protected by an appropriate protective order; their concerns do not justify prohibiting discovery altogether.

**GOVERNMENT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 4**

## I.      The federal rules allow the Government's discovery, regardless of the sufficiency of the Government's *res judicata* defense.

Plaintiffs effectively concede that the Government's discovery falls within the liberal discovery allowed by Rule 26(b). Under Federal Rule of Civil Procedure 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *See also Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (noting that pre-trial discovery should be liberally allowed) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Plaintiffs acknowledge that the Government's discovery is relevant to the Government's *res judicata* defense.  *See* Motion at 14 (recognizing that "factual development may be necessary to determine the existence of privity" for the Government's *res judicata* defense).  Plaintiffs further concede that the Court allowed such discovery to go forward on March 30.  *See* Motion at 4.

Even though they concede that the Government's discovery is relevant, Plaintiffs seek to prohibit that discovery.  Under the liberal discovery standard, Plaintiffs must "carry a heavy burden of showing why discovery" should be denied.  *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *see also Rice v. Union Cent. Life Ins. Co.*, No. CV 05 216 S BLW, 2006 WL 1128223, at *2 (D. Idaho Apr. 26, 2006).  They have failed to carry that burden.

Plaintiffs argue that (1) the Government's discovery on its *res judicata* defense should be prohibited because the defense is not viable and (2) Plaintiffs should not be required to respond to the Government's document requests because Plaintiffs' have responded to interrogatories. Plaintiffs cite no authority for these propositions, and both are contrary to federal law.[3]

---

[3]      Plaintiffs' claim that the "Ninth Circuit has routinely upheld protective orders precluding discovery . . . in circumstances similar to those presented here" (Motion at 7) is misleading. Plaintiffs have failed to identify any case that supports that proposition.  In fact, none of the cases that Plaintiffs have identified limited the Government from taking discovery in an administrative record case.  The first case Plaintiffs cite does not discuss either protective orders or discovery.  *See San Francisco BayKepper v. Whitman*, 297 F.3d 877 (9th Cir. 2002).  The

**GOVERNMENT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 5**

First, Plaintiffs argue that the Court should prohibit the Government's discovery here because the Government's *res judicata* defense is "inapplicable." Motion at 7. However, "[d]iscovery is not to be denied because it relates to a claim or defense that is being challenged as insufficient." Arthur Miller, et al., 8 Fed. Prac. & Proc. Civ. § 2008 (3d ed.); *Alexander v. F.B.I.*, 194 F.R.D. 316, 326 (D.D.C. 2000) *quoting id.*[4] Therefore, Plaintiffs' argument that the Government's *res judicata* defense is inapplicable does not bar discovery on that defense.

Second, Plaintiffs contend that because they have responded to the Government's Interrogatories, the Court should not require Plaintiffs to respond to the Government's Requests for Production. The federal rules, however, do not limit the Government's ability to pursue multiple discovery devices (including requests for production, interrogatories, and depositions) to obtain otherwise relevant information. "[It] cannot be disputed that the various methods of discovery as provided for in the Rules are clearly intended to be cumulative, as opposed to alternative or mutually exclusive." *Richlin v. Sigma Design W., Ltd.*, 88 F.R.D. 634, 637 (E.D. Cal. 1980).[5] The discovery rules do not require the Government to take Plaintiffs' word for it;

---

other two cases that Plaintiffs cite, *Animal Def. Council v. Hodel*, 840 F.2d 1432 (9th Cir. 1988) and *Friends of the Earth v. Hintz*, 800 F.2d 822 (9th Cir. 1986), are also inapplicable because they address the plaintiff's ability to seek discovery in an administrative record case—not the Government's.

[4]     *See also Rehberg v. City of Pueblo*, No. 10-CV-00261-LTB-KLM, 2011 WL 2180659, at *4 (D. Colo. June 2, 2011) ("discovery should not be prohibited merely because it relates to claims that the defense asserts are based on an insufficient theory"); *In re Am. Motor Club, Inc.,* 129 B.R. 981, 987 (Bankr. E.D.N.Y. 1991) (same); *Matter of Novak*, 37 B.R. 31, 33 (Bankr. D. Conn. 1983) ("attacks on the sufficiency of claims in the context of objections to discovery . . . are not favored").

[5]     *See also Becker v. Dahl,* No. CIV S-10-0519 FCD, 2011 WL 121697, at *2 (E.D. Cal. Jan. 13, 2011) ("A request for production of documents seeks documents, while an interrogatory is a question seeking a written response. While the nature of the information sought may in some respect be 'duplicative,' the responses sought take different forms, and defendants are entitled to use both vehicles for conducting discovery.").

**GOVERNMENT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 6**

instead, the Government is permitted to confirm that Plaintiffs have some factual basis for their interrogatory responses. *Nat'l Acad. of Recording Arts & Sciences, Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009) ("Requiring a defendant to answer a contention interrogatory and to produce documents that support its affirmative defenses is consistent with Rule 11 of the Federal Rules of Civil Procedure, which requires parties have some factual basis for their claims and allegations.") (internal quotation marks and citations omitted).

Plaintiffs have failed to meet their burden to show why discovery should be prohibited and so Plaintiffs' Discovery Motion should be denied.

## II.   *Res judicata* may eliminate or significantly limit the claims and issues raised by Plaintiffs' complaint.

Although the Forest Service t is not required to prove its *res judicata* defense on a discovery motion (*see supra* Section I), the Forest Service sets forth its colorable *res judicata* defense below.  Since it is not appropriate to try the Government's substantive defense on this Motion, should the Court find Plaintiffs' arguments as to *res judicata* persuasive, the Government requests the opportunity to brief the issue fully.  The Government does not intend to waive its ability to change or modify its argument in its motion for summary judgment.

Plaintiffs are wrong to suggest that *res judicata* does not apply.  As described above, Judge Candy Dale's 2013 opinion in the First Lawsuit addressed precisely the same issues Plaintiffs raised here.  Therefore, this Court should not permit Plaintiffs to relitigate these issues.

"Res judicata encompasses two subsidiary doctrines, claim preclusion and issue preclusion." *Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1529 (9th Cir. 1985).  "Issue preclusion bars relitigation of issues adjudicated in an earlier proceeding." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006).  To show issue preclusion, the Government must meet three requirements:

> (1) the issue necessarily decided at the previous proceeding is
> identical to the one which is sought to be relitigated; (2) the first
> proceeding ended with a final judgment on the merits; and (3) the
> party against whom collateral estoppel is asserted was a party or in
> privity with a party at the first proceeding.

*Id.* (quoting *Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005) (internal quotation marks

omitted).  Here, all three elements are satisfied.

**A.  Certain of the issues presented in this case are identical to the issues decided by the Court in the First Lawsuit.**

In December 2013, the 2013 Plaintiffs sought a temporary restraining order to compel the

Forest Service to require a Special Use Permit for the 2013 Derby to comply with NEPA for

issuance of the permit.  *WildEarth Guardians, et al. v. Mark, et al.,* 13-CV-533, ECF No.4,

Motion for Temporary Restraining Order at 2 (D. Idaho, Dec. 23, 2013).  The Court declined to

enter such an order, finding that the 2013 Plaintiffs had failed to establish a likelihood of success

on the merits.  *WildEarth Guardians, et al. v. Mark, et al.,* 13-CV-533, ECF No. 23,

Memorandum Decision and Order at 7 (D. Idaho, Dec. 27, 2013) ("Order").

In issuing the Order in the First Lawsuit, the Court determined that Forest Service

regulations did not require a Special Use Permit for the 2013 Derby.  Order at 7.  Specifically,

the Court held that the 2013 Derby was not a "commercial use" under 36 C.F.R. § 251.52 and so

did not require a special use authorization.  *Id*. at 7-8.  The Court explained:

> In this case, the private promoters of the derby are not offering
> merchandise for sale.  Rather, they are encouraging the use of the
> forest for a lawful activity---hunting---and, to compete for prizes,
> the derby participants must return to Salmon to claim them.  None
> of the judging, awarding of prizes, or viewing of the animals will
> be on USFS lands.  Only hunting will occur there.  The entry fee, if
> charged, is not being charged to gain hunting privileges, and the
> derby is not a profit making venture capitalizing on the use of the
> forest . . .

*Id.* at 8.  The circumstances presented by the 2015 Derby are identical.  As in the 2013 Derby, no

**GOVERNMENT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 8**

entry fee was charged in the 2015 Derby.  Forest Service AR at 50.  As in the 2013 Derby, the

sign-in, check-in, and awarding of prizes for the 2015 Derby were done on private property—not

on National Forest land.  *Id.* at 50 and 192.  And as in the 2013 Derby, in the 2015 Derby only

hunting occurred on National Forest land.  *Id.*

      The Court also held that the 2013 Derby did not involve "group use" under 36 C.F.R.

§ 251.50(e) and so did not require special use authorization.  Order at 8.  The 2013 Derby did not

involve a group use because hunters could hunt anywhere they chose and would be dispersed

throughout the forest "hunting at their own pace and in their own preferred territory, and not in a

prescribed location within a designated perimeter."  *Id.*  Similarly, in the 2015 Derby, hunters

hunted on their own, at their own pace and in their preferred territory, not in a prescribed

location within a designated perimeter.  Forest Service AR at 193.

      In this Action, the Court will be asked to decide these same issues with respect to the

2015 Derby.  As in the First Lawsuit, Plaintiffs seek a declaration that the 2015 Derby (and

future events like it) required a Special Use Permit.  Like the claims in the First Lawsuit, these

claims require the Court to determine whether Forest Service regulations require a Special Use

Permit for the 2015 Derby and future events similar to the 2013 and 2015 Derbies.

      Plaintiffs' Complaint recognizes that the issues presented by the 2013 and 2015 Derbies

are identical.  In describing the 2013, 2015 and future potential Derbies.  The Complaint

contends that "[t]he annual carnivore killing contest is a commercial event under USFS

regulations."  Compl. ¶ 65.  Thus the Complaint itself describes the Derbies as one event that is

held annually.

      Although their Complaint explains all the similarities between the 2013 and 2015 Derbies

(as well as all future derbies), in their Discovery Motion, Plaintiffs attempt to distinguish the

**GOVERNMENT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE
ORDER - 9**

2013 Derby from the 2015 Derby, claiming that the derbies involve "different circumstances." Motion at 11.  Plaintiffs fail to explain how any of the alleged differences affect the issue of whether a Special Use Permit is required for the event.  For example, Plaintiffs claim that "[w]hile the 2013 Derby targeted only wolves and coyotes, the 2015 Derby also targeted skunks, weasels, jack rabbits, raccoons and starlings."  Motion at 12.  But Plaintiffs fail to explain how this would affect the issue decided by the court in the First Lawsuit: whether Forest Service regulations require a Special Use Permit.

Plaintiffs' claim that the issues in this action and the First Lawsuit are not identical is not tenable, nor is it consistent with the purpose of *res judicata*.  The purpose of *res judicata* is to "conserve judicial resources, protect litigants from multiple lawsuits, and foster certainty and reliance in legal relations."  *United States v. ITT Rayonier, Inc*., 627 F.2d 996, 1000 (9th Cir. 1980).  If Plaintiffs are correct and minor, immaterial differences can destroy the identity of issues, Plaintiffs would be able to relitigate the same issues annually, just as the event they seek to end occurs annually.  This cannot be the law.

Because the First Lawsuit already determined whether Forest Service regulations require a Special Use Permit for events like the 2013 Derby, the first element of issue preclusion is met.

### B.      The First Lawsuit resulted in a final judgment on the merits.

The Court's order in the First Lawsuit was a final judgment on the merits.  In the Ninth Circuit, "[a] 'final judgment' for purposes of collateral estoppel can be any prior adjudication of an issue in another action that is determined to be 'sufficiently firm' to be accorded conclusive effect."  *Luben Indus., Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983).  To determine whether a judgment is "sufficiently firm," courts consider whether (1) "the decision was avowedly tentative"; (2) "the parties were fully heard"; (3) "the court supported its decision with a reasoned opinion"; and (4) "the decision was subject to appeal or was in fact reviewed on

appeal."[6]  Here, all of these factors weigh in favor of determining that the court's order in the First Lawsuit was a final judgment on the merits.

First, Judge Dale's opinion was not "avowedly tentative."  Judge Dale never suggested that her opinion was tentative, nor is there any evidence that she intended her decision to be tentative, because it allowed the 2013 Derby to go forward as planned.  *See* Order.  Plaintiffs claim that the Court's Order spoke to the "lack of specific evidence necessary to support plaintiffs' claims."  Motion at 9.  The Court's Order, however, was not based on a lack of evidence, but on its interpretation of the Forest Service regulations.  Furthermore, Plaintiffs have failed to show how any additional evidence might have altered the Court's opinion.[7]

Second, the parties were fully heard in the First Lawsuit.  The 2013 Plaintiffs filed a twenty page motion for temporary restraining order, with more than thirty pages of exhibits.  The Forest Service filed its opposition.  And the court held a hearing before issuing its order.

Third, the court issued a detailed and well-reasoned opinion in the First Lawsuit.

---

[6]      Plaintiffs argue that decisions related to temporary restraining orders are rarely given preclusive effect.  But the Ninth Circuit has made no such pronouncement.  *See Hansen Beverage Co. v. Vital Pharm., Inc.*, No. 08-CV-1545IEG(POR), 2008 WL 5427601, at *2 (S.D. Cal. Dec. 30, 2008) ("The Ninth Circuit has not specifically addressed the preclusive effect of findings made during preliminary injunction proceedings.").  And other circuits have found that such proceedings may have preclusive effects.  *Id.*  In the Ninth Circuit, the appropriate inquiry is whether the judgment is "sufficiently firm"; not whether it was entered in response to a request for a temporary restraining order.

[7]      Plaintiffs also argue that the order was tentative because "the court specifically stated that it was not considering all aspects of plaintiffs' argument."  Plaintiffs rely on the Court's statement that "[t]he court is cognizant of Plaintiffs' argument that the plain language of the USFS's regulation suggests an entry fee converts the noncommercial use to commercial use.  But the Court is not deciding that issue at this time."  Order at n.5.  But Plaintiffs' suggestion that the Court was somehow declining to consider an issue before it is misleading.  The 2013 Derby did not *require* an entry fee (nor did the 2015 Derby).  Order at n. 3; Forest Service AR at 50.  So there was no reason for the Court to decide that issue.

**GOVERNMENT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 11**

Fourth, although the denial of a request for a temporary restraining order is appealable (*Envtl. Def. Fund, Inc. v. Andrus*, 625 F.2d 861, 862 (9th Cir. 1980)), the 2013 Plaintiffs chose not to appeal.  The order denying the 2013 Plaintiffs' request for a temporary injunction in the First Lawsuit was sufficiently firm to constitute a final judgment on the merits.

C.     **Discovery will likely show that the New Plaintiffs are in privity with the 2013 Plaintiffs.**

The third and final element of issue preclusion is that the party against whom issue preclusion is asserted was a party to the first proceeding or in privity with a party to the first proceeding.  There is no question that the 2013 Plaintiffs have brought both lawsuits (and so they are barred from relitigating the same issues).  The Government seeks to show that the New Plaintiffs were in privity with the 2013 Plaintiffs, so they are also barred from relitigating the same issues.  It is on this third element that the Government seeks discovery.  And Plaintiffs' Discovery Motion illustrates the need for discovery on the issue of privity, recognizing that "factual development may be necessary to determine the existence of privity."  Motion at 14.

"Privity . . . is a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved."  *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052-53 (9th Cir. 2005) (internal quotation marks and citations omitted).  The Government's discovery  is directed at showing that the New Plaintiffs are "so identified in interest" with the 2013 Plaintiffs that the 2013 Plaintiffs "represents precisely the same right in respect to the subject matter involved."

Plaintiffs seek to use their interrogatory responses to destroy privity.  But Plaintiffs cannot rely on the discovery responses they *choose to provide*, while refusing to respond to the Government's remaining discovery.  Even if Plaintiffs were correct that their interrogatory responses eliminate the possibility of privity (which they do not), the Government would still be

**GOVERNMENT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 12**

entitled to test those responses through document discovery.  *See* Section I, *supra*.  Plaintiffs have failed to show, as a matter of law, that there can be no privity between the 2013 Plaintiffs and the New Plaintiffs.  Discovery should proceed.

III.   **The First Amendment does not bar the Government's discovery.**

Plaintiffs assert that the Government's discovery "chill[s] Plaintiffs' First Amendment rights of association."  But Plaintiffs have known that the Government was seeking discovery into the Plaintiffs' relationships for purposes of establishing a *res judicata* defense since March. When Plaintiffs' opposed the Government's request for discovery, they never mentioned concerns regarding their First Amendment right to association.  Hurwit Decl. ¶ 2.  Even after the Government served its allegedly "chilling and overbroad requests," Plaintiffs still did not complain that the requests chilled their First Amendment rights.  *See* Attachment 1 to Declaration of Andrea Santarsiere.  Rather, they negotiated narrowed responses and agreed to provide responses by May 25 or "while aiming for as early as practicable."  Hurwit Decl. ¶10. Plaintiffs asked for a further extension to respond to discovery three weeks after the Government served revised requests.  It was not until June 3, *long after* Plaintiffs' discovery responses were originally due, that Plaintiffs identified their purported concern that discovery would chill their First Amendment rights.  *See* England Decl. ¶ 11.

Had Plaintiffs truly believed that their First Amendment rights were at risk, they would have filed a motion for a protective order after the Court's March 30 order that discovery proceed.  Or at the very least, they would have sought a protective order when they received the Government's discovery requests on April 3.  But they did not do that.  Instead, they misled the Government into believing that they would comply with their discovery obligations for two months, waiting until June 5 to seek protection under the First Amendment.  Plaintiffs' unreasonable delay should bar their First Amendment defense to discovery.

**GOVERNMENT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 13**

In *National Academy of Recording Arts & Sciences, Inc. v. On Point Events LP*,
256 F.R.D. 678 (C.D. Cal. 2009), the court encountered a similar situation.  There, the defendant
(the party opposing discovery) refused to respond to discovery on the basis that the discovery
sought trade secrets.  The court rejected the defendant's argument, explaining, "if defendant truly
believes it has confidential information that should be protected by a protective order, it should
have entered into a stipulated protective order or filed a motion for a protective order before the
date by which it was to produce responsive documents."  *Id.* at 683; *see also Hill v. Eddie Bauer*,
242 F.R.D. 556 (C.D. Cal. 2007); *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 690 (D. Kan.
2004.).  The Plaintiffs here likewise failed to move for a protective order on the basis of the First
Amendment in a timely fashion.

In any event, Plaintiffs cannot preclude discovery based on the First Amendment because
the Government's interest in obtaining the discovery is rationally related to a compelling
governmental interest:  the Government's defense to Plaintiffs' action.  Furthermore, Plaintiffs'
interests can be adequately protected by a protective order governing the confidentiality of
Plaintiffs' discovery responses.

### A.   Plaintiffs have not shown their need for protection from discovery under the First Amendment.

Plaintiffs assert that they are immune from discovery because any document discovery
will have a "chilling effect on" their right to association.  This is not the law.

In the seminal case on this issue, *NAACP v. Alabama*, the state of Alabama sought the
NAACP's *membership lists*, in a suit seeking to oust the NAACP from Alabama.  The Court held
that "the immunity from state scrutiny of membership lists . . . is here so related to the right of
the members to pursue their lawful private interests privately and to associate freely with others

in so doing as to come within the protection of the Fourteenth Amendment." *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 466 (1958).

The Ninth Circuit addressed this issue more recently in a similarly high-profile case: *Perry v. Schwarzenegger*, 591 F.3d 1126 (2009). There, two same-sex couples brought an action challenging California's Proposition 8, which provided that only a marriage between a man and a woman could be recognized under California law. When the same-sex couples sought the internal campaign communications relating to campaign strategy and advertising from the proponents of Proposition 8, the proponents asserted a First Amendment defense. The Court explained that, in the Ninth Circuit, the party asserting the First Amendment, "must demonstrate a prime facie showing of arguable first amendment infringement." *Id.* at 1140. To make that showing, Plaintiffs must show that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Id.* (quotation marks and citations omitted). Then, the burden shifts to the Government "to demonstrate that the information sought through the [discovery] is rationally related to a compelling governmental interest ... [and] the least restrictive means of obtaining the desired information." *Id.* The Ninth Circuit explained that "the second step of this analysis is meant to make discovery that impacts First Amendment associational rights available only after careful consideration of the need for such discovery, *but not necessarily to preclude it*." *Id.*

The Plaintiffs have failed to establish that the First Amendment precludes discovery here. First, it is questionable whether Plaintiffs have made the requisite prime facie showing. Because Plaintiffs Cascadia Wildlands, Kootenai Environmental Alliance, and Center for Biological Diversity have failed to submit any evidence of chilling, they have failed to make the requisite

**GOVERNMENT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 15**

prime facie showing.  As to the remaining Plaintiffs, their declarations set forth conclusory and hypothetical statements, failing to explain why the specific discovery sought by the Government would be "chilling" and how any alleged "chilling" would affect Plaintiffs' associational rights.[8]

Second, the Government's discovery is rationally related to a compelling governmental interest:  the Government seeks discovery on the issue of *res judicata* to defend against certain claims in this duplicative lawsuit.  As set forth above, the discovery the Government seeks is necessary to the Government's *res judicata* defense.  And as set forth below, the outstanding discovery is narrowly tailored to support that defense.

**B.    The Court can protect Plaintiffs' confidentiality concerns with an appropriate protective order.**

The bulk of Plaintiffs' concern is directed at the risk that the public will have access to Plaintiffs' information.[9]  This concern can be addressed by the entry of an appropriate protective order, protecting Plaintiffs' confidential information from disclosure to the public.

In the Ninth Circuit, "[i]t is well-established that the fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public. Rule 26(c) authorizes a district court to override this presumption where 'good cause' is shown."  *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.,* 307 F.3d 1206, 1210 (9th Cir. 2002); *see also Pesky*, 2010 WL 4174670, at *4.  Under this presumption, discovery should be treated as public, not confidential.

---

[8]     *See, e.g.* Declaration of Brooks Fahy ("If Predator Defense was forced to turn over communications with other Plaintiff groups concerning the broad topic of carnivore protection, it would have a chilling effect on our operations."); Declaration of Travis Bruner (same as to WWP).

[9]     *See, e.g.*, Decl. of Bethany Cotton ("Many of the campaigns on which I collaborate with others are multi-stage and multiyear campaigns that may be threatened if internal discussions, strategizing, and brainstorming were to be made *public*.") (emphasis added); Decl. of Brooks Fahy ¶ 10 ("citizens who many not want to be *publicly* identified") (emphasis added); Decl. of Travis Brunner ¶ 14 (same).

**GOVERNMENT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 16**

Plaintiffs' proposed confidentiality order unfairly shifts the burden to the *Government* to manage Plaintiffs' confidentiality obligations.  Plaintiffs propose that *if* they produce documents responsive to the Government's request, the Government should be required to identify any documents it wishes to attach to a public filing before filing any documents.  Then, Plaintiffs may "agree to allow" the Government to attach specific examples.

Plaintiffs' proposal effectively shortens the Government's filing deadlines, requires the Government to provide notice of the discovery it wishes to use to Plaintiffs in advance of its filings, and puts those filings at the mercy of Plaintiffs' agreement.  But it is Plaintiffs burden to prove why discovery documents are not public.  Therefore, *Plaintiffs* should designate which information is subject to protection.  They should not designate all information as subject to protection.  Once Plaintiffs designate such material, the Government will then know which documents should be filed under seal.

The Government proposes that the Court enter a protective order mirroring that in *Pesky v. United States*.  In *Pesky*, the Court set forth a standard protective order, in which the party seeking to protect information designates that information as confidential.  *Pesky*, 2010 WL 4174670 at *4 (internal quotation marks and citations omitted).  Then, any information so designated is filed under seal.[10]  *Id.*

### C.   The Government's discovery is narrowly tailored to elicit information related to its *res judicata* defense.

To prove its *res judicata* defense against the New Plaintiffs, the Government must show that the 2013 Plaintiffs were in privity with the New Plaintiffs.  In cases like this, where the

---

[10] The example protective order in *Pesky* is also instructive here because it addresses the Government's obligations to retain certain records and comply with its obligations under FOIA. *Id.* at *6 ("The United States may maintain certain records after the conclusion of this lawsuit in accordance with the Justice Department's written record retention policy, and it may comply with its obligation to disclose certain non-exempt information under the FOIA.").

parties are not identical, privity may be an extremely fact-intensive determination. *See, e.g.*

*Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047 (9th Cir. 2005).  The Government contends

that the concept of privity is flexible.  Plaintiffs, however, contend that to show privity, the

Government must show "a close relationship" between the 2013 Plaintiffs and New Plaintiffs;

"substantial participation" by the New Plaintiffs in the First Lawsuit; and "tactical

maneuvering."   The Government's document requests seek only to show these elements.

The Government has substantially narrowed these requests, both in substance and in

number, reducing the requests from eighteen to eight.  The Government has further proposed that

if Plaintiffs will concede that they were in privity, the Government will withdraw its requests.

**Document Requests 3 and 5:**  Document Request Numbers 3 and 5 are directed to show

that each New Plaintiff had a close relationship with at least one of the 2013 Plaintiffs.[11]

Because such relationships would likely be reflected in communications among the

organizations, the Government has sought communications between the Plaintiffs' regarding the

protection, restoration, and hunting of canine predators.

Plaintiffs complain that Requests 3 and 5 "encompass large portions of what [Plaintiffs]

do and implicate hundreds if not thousands of emails not related to the predator derby or privity,

---

[11]     For the 2013 Plaintiffs, **Document Request 3** seeks:  COMMUNICATIONS regarding the protection and restoration of canine predators that were between (a) YOU and at least one NEW PLAINTIFF or (b) YOU and at least one other 2013 PLAINTIFF in which a NEW PLAINTIFF was referenced.

For the New Plaintiffs, **Document Request 3** seeks:  COMMUNICATIONS between YOU and any OTHER PLAINTIFF regarding the protection and restoration of canine predators.

For the 2013 Plaintiffs, **Document Request 5** seeks:  COMMUNICATIONS regarding the hunting of canine predators that were between (a) YOU and at least one NEW PLAINTIFF or (b) YOU and at least one other 2013 PLAINTIFF in which a NEW PLAINTIFF was referenced.

For the New Plaintiffs, **Document Request 5** seeks:  COMMUNICATIONS between YOU and any OTHER PLAINTIFF regarding the hunting of canine predators.

**GOVERNMENT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 18**

the production of which would consume hundreds of hours of staff time." Specifically, Project

Coyote (a 2013 Plaintiff) complains that these requests "encompass . . . almost everything that

we do." Fox Decl. at ¶ 8. But these requests *do not seek* all documents related to the hunting,

protection and restoration of canine predators. They seek *communications between the 2013*

*Plaintiffs and the New Plaintiffs* on those issues. If Ms. Fox is correct that almost all of Project

Coyote's emails involve a New Plaintiff, then a "close relationship" between Project Coyote (a

2013 Plaintiff) and the New Plaintiffs is most certainly established.

**Document Requests 7-10 and 16.** Document Requests 7-10[12] and 16[13] are directed to

show tactical maneuvering and a close relationship. Requests 7 and 9 seek communications

between the Plaintiffs regarding the 2013 and 2015 Predator Derbies, including communications

regarding the response of the United States to the 2013 Predator Derbies. These communications

may show that Plaintiffs acted together to strategize regarding how to challenge the 2013 and

2015 Predator Derbies.[14] Requests 8 and 10 seek communications by Plaintiffs with their

---

[12]     **Document Request 7** (as to all Plaintiffs) seeks: COMMUNICATIONS between YOU
and any OTHER PLAINTIFF regarding the PREDATOR DERBY.COMMUNICATIONS
regarding the hunting of canine predators that were between (a) YOU and at least one NEW
PLAINTIFF.

     **Document Request 8** (as to all Plaintiffs) seeks: COMMUNICATIONS that YOU sent
to YOUR members or supporters regarding the PREDATOR DERBY.

     **Document Request 9** (as to all Plaintiffs) seeks: COMMUNICATIONS between YOU
and any OTHER PLAINTIFF regarding the response of the United States, or of any federal
agency, to the PREDATOR DERBY.

     **Document Request 10** (as to all Plaintiffs) seeks: COMMUNICATIONS that YOU sent
to YOUR members or supporters regarding the response of the United States, or of any federal
agency, to the PREDATOR DERBY.

[13]     **Document Request 16** (as to all Plaintiffs) seeks: Any fundraising requests or
fundraising notices that YOU sent or posted RELATED TO the PREDATOR DERBY.

[14]     Plaintiffs complain that Requests 7 and 9 seek information protected by the attorney-
client privilege. The Government is not asking Plaintiffs to produce privileged information. If

members regarding how to challenge the 2013 and 2015 Predator Derbies. Request 16 seeks

related fundraising requests. These communications may show that Plaintiffs told their members

(or those to whom they sent fundraising requests) that they were working with other Plaintiffs in

challenging the 2013 and 2015 Predator Derbies.

**Document Request 18**.  Document Request 18 is directed at showing substantial

participation by the New Plaintiffs in the First Lawsuit.

> As to the 2013 Plaintiffs, **Document Request 18** seeks:
> COMMUNICATIONS between YOU and any NEW PLAINTIFF
> regarding the FIRST LAWSUIT.

> As to the New Plaintiffs, **Document Request 18** seeks:
> COMMUNICATIONS between YOU and any 2013 PLAINTIFF
> regarding the FIRST LAWSUIT.

These Requests are narrowly tailored to show that the New Plaintiffs participated in the First

Lawsuit.

Because the Government's remaining discovery requests are narrowly tailored to support

the Government's *res judicata* defense, the Court should reject Plaintiffs' proposed First

Amendment immunity.

## CONCLUSION

The Court should deny Plaintiffs' Motion to for a Protective Order and require Plaintiffs

to respond to the Government's outstanding discovery.  The Court should further extend the

deadline for discovery accordingly.

---

information responsive to Requests 7 and 9 is privileged, Plaintiffs need only log it on a privilege
log.

**GOVERNMENT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE
ORDER - 20**

Respectfully submitted this 29th day of June, 2015.

WENDY J. OLSON
UNITED STATES ATTORNEY
By:


/s/ Christine G. England
 CHRISTINE G. ENGLAND
 Assistant United States Attorney


**GOVERNMENT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 21**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 29, 2015, the foregoing **GOVERNMENT'S**

**OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER** was

electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of

Electronic Filing to the following persons:

Celeste K. Miller
McDevitt & Miller, LLP
P.O. Box 2564
Boise, ID 83701
ck@mcdevitt-miller.com

Laura King
Western Environmental Law Center
103 Reeder's Alley
Helena, MT 59601
king@westernlaw.org

John R. Mellgren
Western Environmental Law Center
1216 Lincoln Street
Eugene, OR 97401
mellgren@westernlaw.org

Andrea Lynn Santarsiere
Center for Biological Diversity
P.O. Box 469
Victor, ID 83455
asantarsiere@biologicaldiversity.org


/s/ Danielle Narkin
Legal Assistant