WENDY J. OLSON, ID STATE BAR NO. 7634
UNITED STATES ATTORNEY
**CHRISTINE G. ENGLAND, CA STATE BAR NO. 261501**
**ASSISTANT UNITED STATES ATTORNEY**
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1414
Email:  Christine.England@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILDEARTH GUARDIANS, CASCADIA WILDLANDS, BOULDER-WHITE CLOUDS COUNCIL, KOOTENAI ENVIRONMENTAL ALLIANCE, PREDATOR DEFENSE, CENTER FOR BIOLOGICAL DIVERSITY, WESTERN WATERSHEDS PROJECT AND PROJECT COYOTE,<br><br>        Plaintiffs,<br><br>   v.<br><br>JOE KRAAYENBRINK, in his official capacity; UNITED STATES BUREAU OF LAND MANAGEMENT, a federal agency; CHARLES A. MARK, in his official capacity; and UNITED STATES FOREST SERVICE, a federal agency,<br><br>        Defendants. | Case No. 4:14-CV-00488-REB<br><br>**THE FOREST SERVICE'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS (ECF No. 80-2)** |

**THE FOREST SERVICE'S STATEMENT OF UNDISPUTED FACTS**

## FOREST SERVICE'S STATEMENT OF UNDISPUTED FACTS

**Hunting and the Salmon-Challis National Forest**

1.      The Salmon-Challis National Forest (the "Forest") covers over 4.3 million acres in east-central Idaho.[1]  Combining it with other adjacent national forests, there are over ten million acres of national forest land surrounding Salmon, Idaho.  (Declaration of Charles Mark ("Mark. Decl.") ¶ 11, FSAR 00124.)  State-owned land, private land, and land managed by the Bureau of Land Management also surround Salmon, Idaho.

2.      Pursuant to historical practice and as codified by federal statutes, hunting is subject to state regulation.  *See* 16 U.S.C. § 528 (Multiple Use and Sustained Yield Act of 1960) (stating that nothing in the act "shall be construed as affecting the jurisdiction or responsibilities of the several States with respect to wildlife and fish on the national forests"); 16 U.S.C. § 1604(e)(1) (National Forest Management Act of 1976) (incorporating same).  The Forest Service works cooperatively with the State of Idaho regarding management of wildlife and regulation of hunting on National Forests.  (Mark Decl. ¶ 9, FSAR000123)

3.      In Idaho, coyotes are classified as predatory wildlife and someone with an appropriate license may hunt them, generally without limit.  (Declaration of Thomas Keegan, Ph.D. ("Keegan Decl.") ¶ 6, FSAR000128; *see also* Idaho Upland Game, Furbearer and Turkey 2016 & 2017 Seasons and Rules at 44, *available at* https://idfg.idaho.gov/sites/default/files/seasons-rules-upland-2016-2017.pdf.)  Coyote populations remain consistent and robust.  (Keegan Decl. ¶ 6, FSAR000128.)

---

[1]      *See* http://www.fs.usda.gov/scnf/.

**THE FOREST SERVICE'S STATEMENT OF UNDISPUTED FACTS**- 1

4.      The United States Fish and Wildlife Service most recently removed wolves from Endangered Species Act protections in Idaho on May 5, 2011.  The Idaho State Legislature enacted a wolf management plan to support the delisting.  For a five-year post-delisting monitoring period, Idaho must document the presence of a minimum of 150 wolves and 15 breeding pairs at the end of each year.  The gray wolf is classified as a big game animal. (Keegan Decl. ¶ 8, FSAR000129.)

5.      Licensed hunting and trapping by private individuals or groups is the primary way that the State controls wolf populations.  (*Id.* ¶ 10, FSAR000129.)  The Idaho Department of Fish and Game established "wolf management zones" and sets harvest limits for these zones.  In doing so, it seeks to achieve delisting objectives (*i.e.*, maintaining the required population and breeding pair numbers) while reducing wolf populations in these zones to balance them with those of other big game species (including elk), to reduce attacks on livestock and domestic animals, and to keep wolves from encroaching on populated areas.  (*Id.* ¶ 16, FSAR000130.) The wolf hunting season runs from late summer/early fall until either March 31 or until limits are reached.  (*Id.* ¶ 17, FSAR000130-131.)

6.      The Forest sits in parts of four different wolf management zones.  In past years, the harvest limits have not been reached for these zones.  (*See id.*; Idaho Fish & Game 2015-2016 Hunting/Trapping Season Wolf Harvest Quota, *available at* https://idfg.idaho.gov/hunt/wolf/quota.)  Idaho Department of Fish and Game has observed that wolf harvest rates are highest in October "when there are tens of thousands of deer and elk hunters afield statewide, and in January/February when both wolf trapping and wolf hunting seasons are open in some zones."  (Keegan Decl. ¶ 18, FSAR000131-132.)  During these "busy" periods, there might be 3-5 wolves taken on a single day across the entire state.  (*Id.*)

**THE FOREST SERVICE'S STATEMENT OF UNDISPUTED FACTS**- 2

7.      The Idaho Department of Fish and Game monitors wolf harvests, and hunters are required to report a kill within 72 hours and have it verified by state authorities within 10 days. (Keegan Decl. ¶ 12, FSAR000129.)

8.      Wolves are extremely difficult to kill by hunting.  (Mark Decl. ¶ 9, FSAR000124; *see also* Keegan Decl. ¶ 18, FSAR000131.)  During the winter, when wolves are less active and there are far fewer hunters afield than during a typical elk or deer hunting season, the likelihood of wolves being killed by hunters is extremely low.  (Mark Decl. ¶ 9, FSAR000124.)

9.      The Forest Service receives few reports of conflicts between hunters and non-hunters, even when there are thousands of hunters afield during the deer and elk seasons.  (Mark Decl. ¶ 12, FSAR000125.)

10.     The Forest's greatest concern for conflict between visitors and the National Forest during the winter is between over-snow motor vehicle users and non-motorized users, such as skiers and snowshoers.  During the winter, the Forest's law enforcement efforts are largely directed at preventing motor vehicles from entering the Frank Church River of No Return Wilderness.  (Mark Decl. ¶ 13, FSAR000125-126.)

**The 2013 and 2015 Derbies**

11.     In December 2013, a non-profit hunting organization called Idaho for Wildlife sponsored a "Coyote and Wolf Derby" in Salmon, Idaho (the "2013 Derby").  *WildEarth Guardians v. Mark*, at *1.  The 2013 Derby awarded prizes for hunters who had taken wolves and coyotes during a specified time period.  *Id.*  Idaho for Wildlife indicated that hunting could take place on National Forest, private and state lands, but it did not control or limit where contestants could take game.  *Id.*  The Forest Service determined that there were no activities associated with the 2013 Derby that required a special use permit from the Forest Service.  *Id.*

**THE FOREST SERVICE'S STATEMENT OF UNDISPUTED FACTS**- 3

12.     In 2013, the Regional Wildlife Manager for the Salmon Regional Office of the

Idaho Department of Fish and Game, Dr. Thomas Keegan, explained that:

> Based on my experience, I do not expect that coyote harvest that
> might occur during a 2-day hunting event such as the "derby"
> planned by Idaho for Wildlife in the Salmon area on December 28-
> 29, 2013, whether on USFS-managed lands or elsewhere, would
> affect the overall coyote population.  (Keegan Decl. ¶ 7,
> FSAR000128.)

13.     Dr. Keegan also explained that:

> I would be very surprised if a two-day hunting event like the Idaho
> for Wildlife wolf and coyote derby results in the harvest of more
> than one to three wolves.  Based on my education and experience, I
> also do not expect that any wolf harvest that might occur during
> the proposed wolf derby would be detrimental to the overall wolf
> population.  (Keegan Decl. ¶ 18, FSAR000131-132.)

14.     The 2013 Derby proceeded as planned, with approximately 26 hunters

participating (Declaration of Steve Alder ¶ 3).  No wolves were killed.  (*Id.* ¶ 5.)

15.     In January 2015, Idaho for Wildlife sponsored a second hunting contest in Salmon

(the "2015 Derby").  The Forest Service again determined that none of the activities associated

with the 2015 Derby required special use authorization.  (FSAR000198-199.)  Approximately 86

hunters participated.  (Alder Decl. ¶ 7.)  Again, no wolves were killed during the 2015 Derby.

(*Id.* ¶ 8.)

16.     Idaho for Wildlife did not charge a fee to participate in the 2013 or 2015 Derbies.

(FSAR000071, FSAR000050.)

17.     The number of hunters afield during the Derbies (topping out at 86 during the

2015 Derby) is far fewer than the thousands of hunters afield during the ordinary and far

lengthier fall deer and elk seasons.  (*See* Keegan Decl. ¶ 18. FSAR000131-132; Mark Decl. ¶ 10,

FSAR000124-125, Alder Decl. ¶¶ 4, 7.)  The chance of encountering a hunter during deer and

elk seasons is substantially greater than during a derby. (Mark. Decl ¶ 10, FSAR000124-125.)

**THE FOREST SERVICE'S STATEMENT OF UNDISPUTED FACTS**- 4

18.     Forest Supervisor, Charles Mark, determined that no permit was required for the 2013 and 2015 Derbies because the proposals did not involve the use of National Forest land, improvements or resources.  (FSAR000190; FSAR000198.)  As Mr. Mark explained, Derby participants were not

> paying organizers to go onto the National Forest to hunt, and organizers are not offering equipment or services to facilitate hunting on the National Forest. Participants in the derby may hunt anywhere they wish, they are not limited to an area on NFS land, nor are they being specifically invited to an area of NFS land. (FSAR00198.)

19.     Mr. Mark concluded, the "derby is an event confined to a business location in the Town of Salmon, and involves the award of prizes to hunters who bring animals taken during noncommercial recreational hunting activities to that business location to compete for prizes." (FSAR00197; *see also* FSAR000191.)

20.     The Chief of the Forest Service, Thomas L. Tidwell, concurred in Mr. Mark's analysis.  (FSAR000327.)

21.     Mr. Mark's determination is consistent with the analysis of high-level agency officials (*see* Declaration of Kenneth D. Paur, Exs. 2, 4), as well as other Forest Service regional and field offices (*see id.,* Exs. 1, 3, 5, 6).

**Plans for Future Derbies**

22.     Idaho for Wildlife did not hold a hunting contest in Salmon during the 2015-2016 winter season.  (Alder Decl. ¶ 10.)

23.     Idaho for Wildlife does not plan to hold a hunting contest for the 2016-2017 winter season.  (*Id.* ¶ 11.)

24.     Idaho for Wildlife has not yet determined whether to hold another derby sometime after the 2016-2017 season.  (*Id.* ¶ 12.)

**THE FOREST SERVICE'S STATEMENT OF UNDISPUTED FACTS**- 5

25.     Diversion of the Forest's law enforcement resources to monitor a potential future derby would detract from the Forest's ability to enforce motor vehicle restrictions, which is the most significant source of use conflict on the Forest during the winter.  (Mark Decl. ¶ 13, FSAR000125-126.)

## OPPOSITION TO PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS

1.     The Forest Service disputes Paragraphs 7, 8, and 15 of Plaintiffs Statement of Undisputed Facts.  For the reasons set forth in the Forest Service's Motion to Strike (ECF No. 84), the Court should not consider those paragraphs because they rely on extra-record evidence:

2.     The Forest Service disputes Paragraph 19 of Plaintiffs' Statement of Undisputed Facts.  The Declaration of Steve Alder, Executive Director of Idaho for Wildlife, establishes that Idaho for Wildlife does not currently have any plans to hold an annual hunting contest.  (Alder Decl. ¶¶ 10-12.)

Respectfully submitted this 26th day of July, 2016.

WENDY J. OLSON
UNITED STATES ATTORNEY
By


/s/ Christine G. England
CHRISTINE G. ENGLAND
Assistant United States Attorney

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 26, 2016, the foregoing **THE FOREST SERVICE'S**

**STATEMENT OF UNDISPUTED FACTS** was electronically filed with the Clerk of the Court

using the CM/ECF system and a copy was served via electronic mail to the following person(s):

Natalie J Havlina
Law Office of Natalie J. Havlina
P.O. Box 1675
Boise, ID  83701
havlinalaw@gmail.com

Laura King
Western Environmental Law Center
103 Reeder's Alley
Helena, MT  59601
king@westernlaw.org

John R. Mellgren
Western Environmental Law Center
1216 Lincoln Street
Eugene, OR  97401
mellgren@westernlaw.org

Andrea Lynn Santarsiere
Center for Biological Diversity
P.O. Box 469
Victor, ID  83455
asantarsiere@biologicaldiversity.org

/s/ Kathy Sims
Kathy Sims, Paralegal

**THE FOREST SERVICE'S STATEMENT OF UNDISPUTED FACTS**- 7