Dana Johnson (ISB # 8359)
Law Office of Dana Johnson, PLLC
P.O. Box 9623
Moscow, ID 83843
Ph: (208) 310-7003
johnsondanam@gmail.com

Laura King, *pro hac vice* (MT Bar # 13574)
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
Ph: (406) 204-4852
king@westernlaw.org

John R. Mellgren, *pro hac vice* (OR Bar # 114620)
Western Environmental Law Center
1216 Lincoln Street
Eugene, Oregon 97401
Ph: (541) 359-0990
mellgren@westernlaw.org

*Attorneys for Plaintiffs WildEarth Guardians, Cascadia Wildlands, and Kootenai Env. Alliance*

Andrea L. Santarsiere (ISB # 8818)
Center for Biological Diversity
P.O. Box 469
Victor, ID 83455
Ph: (303) 854-7748
Fax: (208) 787-5857
asantarsiere@biologicaldiversity.org

*Attorney for Plaintiffs Ctr. for Biological Diversity, W. Watersheds Project, and Project Coyote*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO
EASTERN DIVISION**

| | |
|---|---|
| WILDEARTH GUARDIANS ET AL.,<br><br>Plaintiffs,<br>v.<br><br>JOE KRAAYENBRINK ET AL.,<br><br>Defendants. | Case No. 4:14-cv-00488-REB<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO THE FOREST SERVICE'S MOTION FOR SUMMARY JUDGMENT** |

**TABLE OF CONTENTS**

I. Plaintiffs have standing to pursue their claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A. Plaintiffs have suffered injury in fact caused by the Forest Service. . . . . . . . . . . . . . . 1

    B. A favorable decision from the Court would redress Plaintiffs' injuries caused by the Forest Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II. The Forest Service's failure to require a permit was unlawful. . . . . . . . . . . . . . . . . . . . . . . 7

    A. The killing contest is a group use. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B. In the alternative, the killing contest is a commercial use. . . . . . . . . . . . . . . . . . . . . 9

    C. In the alternative, the killing contest is a "group use" or "recreation event" involving the use of National Forest System roads. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    D. The killing contest is a "special use." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

III. The Forest Service must conduct NEPA analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IV. The injunctive relief Plaintiffs seek is appropriate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Plaintiffs respectfully submit this reply in support of their motion for partial summary judgment and response in opposition to the Forest Service's motion for summary judgment.

**I.  Plaintiffs have standing to pursue their claims.**

A plaintiff demonstrates standing when "(1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." *WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148, 1154 (9th Cir. 2015) (internal citation omitted). "[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 52 n. 2 (2006); *see also Mass. v. Envt'l Prot. Agency*, 549 U.S. 497, 518 (2007) ("Only one of the petitioners needs to have standing to permit … review.").[1]

**A.  Plaintiffs have suffered injury in fact caused by the Forest Service.**

To establish standing, "a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized"; "the threat must be actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009). "[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for

---

[1]  Although it is not challenged by the Forest Service, Plaintiffs also have organizational standing. An organization "has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Ore. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1109 (9th Cir. 2003) (internal citation omitted). Here, Plaintiffs' members have standing to sue in their own right and the interests Plaintiffs seek to protect are germane to their organizations' purposes. *See, e.g.*, ECF 80-14 at 3 ¶ 12 (describing Western Watersheds Project's mission and organizational purpose); Greenwald Decl.; Cotton Decl. Additionally, where, as here, associational plaintiffs do not seek individualized relief for their members that would require individualized proof, the participation of individual members is not required. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

1 – PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 183 (2000) (citations omitted). Actual environmental harm from the complained-of activity need not be shown as "reasonable concerns" that harm will occur are enough. *Id.*

Additionally, courts "may recognize a 'procedural injury' when a procedural requirement has not been met" if "the plaintiff also asserts a 'concrete interest' that is threatened by the failure to comply with that requirement." *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004). In National Environmental Policy Act ("NEPA") cases, "a cognizable procedural injury exists when a plaintiff alleges that a proper [Environmental Impact Statement] has not been prepared" if "the plaintiff also alleges a 'concrete' interest—such as an aesthetic or recreational interest—that is threatened by the proposed action." *Id.* Plaintiff members' declarations that they have viewed, or attempted to view, "animals in the affected region previously, enjoy doing so, and have plans to return satisfies the requirement for a concrete injury in fact with geographic nexus to the challenged action." *WildEarth Guardians*, 795 F.3d at 1155.

Here, Plaintiffs have suffered, and will suffer, concrete and particularized injury in fact that is also actual and imminent. These procedural and substantive injuries to their interests are due to the Forest Service's failure to comply with its own regulations regarding permits and with NEPA and the Administrative Procedure Act ("APA"). For example, Louise Wagenknecht has recreational, scientific, and aesthetic interests in wolves, coyotes, and other wildlife on the Salmon-Challis National Forest ("SCNF") and recreational interests in the SCNF itself. ECF 80-10 (Wagenknecht Dec.) at 2-3 ¶¶ 5-6. Ms. Wagenknecht splits her time between Salmon, Idaho and Leadore, Idaho (approximately 45 minutes from Salmon). *Id.* at 2 ¶ 2. This proximity to the SCNF allows Ms. Wagenknecht to regularly recreate on the Forest in her personal time, *id.* at 2 ¶ 5, as well as through her volunteer work with the Salmon Animal Shelter, *id.* at 4-5 ¶¶ 12-14. Ms. Wagenknecht visits the

2 – PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

SCNF dozens or more times a year, year-round—including during winter—for dog-walking, hiking, wildlife-watching, and many other activities. Wagenknecht Second Decl. at 1 ¶ 3; ECF 80-10 at 2 ¶ 5. She intends to continue to regularly visit the SCNF in the future. ECF 80-10 at 2 ¶ 5.

At the time Plaintiffs filed the complaint, Ms. Wagenknecht's interests in the SCNF's wildlife had already been injured during the 2013 killing contest when "over twenty coyotes were killed." *Id.* at 5 ¶ 16. The imminent 2015 killing contest and future killing contests threatened, and caused, additional harm. *Id.* at 5-9 ¶¶ 18-29. Ms. Wagenknecht is concerned that if killing contests continue on the SCNF with no permitting or environmental review, her interests in viewing wolves and coyotes will be harmed further. *Id.* at 3 ¶ 7, 7-8 ¶ 26, 9 ¶ 29. When wolves and coyotes are killed on the SCNF, Ms. Wagenknecht loses the chance to view those individual animals during and after the killing contest. Wagenknecht Second Decl. at 2 ¶ 5. Thus, Ms. Wagenknecht's injury represents a concrete and particularized, and actual and imminent, injury in fact caused by the Forest Service.

Further, Ms. Wagenknecht's interests in recreating on the SCNF were and are injured because past and future contests have prevented and would prevent her from recreating on the Forest during those contests. ECF 80-10 at 5-7 ¶¶ 17, 19-21, 24; Wagenknecht Second Decl. at 2-3 ¶ 6-12. Ms. Wagenknecht has significant and legitimate fears that she and her dogs would not be safe recreating on the SCNF during the killing contest. *Id.* Ms. Wagenknecht is concerned that the killing contest will involve less careful shooting than an ordinary hunting season due to time pressure and cash prizes. *Id.* at 2-3 ¶ 8-9. Ms. Wagenknecht is also concerned that the killing contest will be concentrated near Salmon where she recreates, in contrast to an ordinary hunting season, due to time pressure that discourages contestants from going into the backcountry. *Id.* at 3, ¶ 12. She is aware of instances of wolf hunters accidentally shooting dogs—and fears that risk is heightened here due to the excitement and time pressure of the contest. *Id.* at 3, ¶ 11. Being deprived of the ability to

3 – PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

recreate on the Forest during a killing contest authorized by the Forest Service represents a concrete and particularized, and actual and imminent, injury in fact caused by the Forest Service.

Finally, Ms. Wagenknecht has suffered procedural injury caused by the Forest Service's failure to comply with NEPA and the APA. ECF 80-10 at 7-9 ¶¶ 25-29; *see Cascadia Wildlands v. Woodruff*, 151 F. Supp. 3d 1153, 1160 (W.D. Wash. 2015) (NEPA is "designed to protect Plaintiffs' aesthetic and recreational enjoyment of gray wolves and other wildlife" and Plaintiffs' "enjoyment in specified geographic areas" would be lessened by wolf killing).[2] If the Forest Service analyzed the effects of the killing contest through NEPA, the agency might impose conditions on the killing contest to reduce its effects on the recreating public and wildlife, or require liability insurance. Or, the Forest Service might decide to not issue a special use permit, thereby prohibiting the killing contest from Forest Service lands. *See Cantrell v. City of Long Beach*, 241 F.3d 674, 682 (9th Cir. 2001) ("[T]o establish redressability plaintiffs asserting procedural standing need not demonstrate that the ultimate outcome following proper procedures will benefit them.").

The Forest Service's attacks on Plaintiffs' standing are baseless. First, the Forest Service contends that Plaintiffs have offered no evidence that a future killing contest is reasonably likely and, therefore, Plaintiffs cannot show a risk of imminent future injury required for injunctive relief. ECF 83-1 at 5 (noting that IFW did not hold a killing contest in the 2015-2016 season, and does not plan to hold a killing contest in the 2016-2017 season) (citing ECF 83-3, Alder Decl. ¶¶ 9-11). However, the Forest Service ignores Plaintiffs' procedural injuries that have occurred and continue to occur. Furthermore, the Forest Service's argument ignores the fact that "[t]he existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir.2007) (citation omitted). When the complaint was filed,

---

[2] Plaintiffs' other standing declarants similarly have suffered concrete and particularized, and actual and imminent, injury in fact. *See* ECF 80-9 (Clay Decl.); ECF 80-11 (Cole Decl.); ECF 80-12 (Dalsaso Decl.); ECF 80-13 (Laughlin Decl.); ECF 80-14 (Wuerthner Decl.).

4 – PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiffs had suffered injuries to their interests from the 2013 killing contest, *see, e.g.,* ECF 80-10 at 5 ¶ 16, and faced imminent future injury from the 2015 and future killing contests, *see, e.g.,* ECF 80-10 at 5-9 ¶¶ 18-29, ECF 80-14 at 8-11 ¶¶ 33-41, ECF 80-11 at 9-11 ¶¶ 44-52, ECF 80-12 at 3 ¶ 10, 16, ECF 80-9 at 3-4 ¶¶ 10-14. The Defendants had provided blanket permission for the contest, AR 427, and there was no indication that the contest would not reoccur. Shortly after the complaint filing, the contest occurred again. Plaintiffs still face imminent future injury: the Forest Service admits that another derby may take place. ECF 83-2 ¶ 24 ("Idaho for Wildlife has not yet determined whether to hold another….").

Second, the Forest Service argues that the Plaintiffs have not shown that their members have concrete plans to visit the Forest during a future contest. ECF 83-1 at 7. But this is not what Plaintiffs must show. "Where the recreational use of a particular area has been extensive and in close proximity to the plaintiff, an affiant's expressed intention to continue using the land is sufficiently concrete to underwrite an injury-in-fact." *Idaho Conservation League v. U.S. Forest Serv.*, 2014 WL 912244 (quoting Jayne *v. Sherman*, 706 F.3d 994, 999 (9th Cir. 2013)). Plaintiffs have standing because their members are frequent visitors to the SCNF who would avoid the Forest during a contest. ECF 80-10 at 7 ¶ 24; *see Laidlaw*, 528 U.S. at 184 (statements that declarants would use an area but for an agency action are adequate to show standing); *Summers*, 555 U.S. at 494 (declarant who "repeatedly visited" subject area and claimed "imminent plans to do so again" suffices for standing purposes). Indeed, because Plaintiffs do not know when a future contest may occur, it would be impossible to meet the high burden the Forest Service suggests. Furthermore, the Forest Service's authorization of the contest injures Plaintiffs year-round by reducing the chance they will see wolves, coyotes, or their sign on Forest outings. Plaintiffs have established both (1) concrete and particularized and (2) actual and imminent injuries in fact, caused by the Forest Service.

5 – PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### B. A favorable decision from the Court would redress Plaintiffs' injuries caused by the Forest Service.

Plaintiffs' injuries are caused by the Forest Service and can be redressed by Plaintiffs' requested relief. Allowing the killing contest on the SCNF without a permit or environmental analysis injures the Plaintiffs' members and their interests as described above. A favorable opinion would require permitting and environmental analysis for the killing contest. This would cause the Forest Service to analyze the safety risks and wildlife impacts of the contest, and consider alternatives or mitigation measures to protect people, pets, wildlife, and other Forest resources. ECF 80-10 at 8 ¶ 27. For example, after analysis, the Forest Service might decide to: exclude lands near communities or sensitive areas important for wildlife such as Wilderness Study Areas; limit the event to a single year; provide monitoring to allow for further analysis before re-authorization; require liability insurance; or not permit the event. *Id.* If the Forest Service conducts permitting and environmental analysis, Plaintiffs injuries could be redressed through the incorporation of mitigation measures or a decision not to permit the event.

Further, environmental analysis as contemplated by NEPA would redress Plaintiffs' procedural injury and would provide an opportunity for public participation. And "[o]nce plaintiffs seeking to enforce a procedural requirement establish a concrete injury, 'the causation and redressability requirements are relaxed.'" *WildEarth Guardians*, 795 F.3d at 1154 (quoting *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 485 (9th Cir. 2011)). A plaintiff's "members must show only that they have a procedural right that, if exercised, *could* protect their concrete interests." *Kraayenbrink*, 632 F.3d at 485 (citation omitted).

In arguing that Plaintiffs have not shown causation and redressability, the Forest Service cites a district court case that was explicitly overturned by the Ninth Circuit Court of Appeals more than a year ago. ECF 83-1 at 7. In *WildEarth Guardians v. U.S. Dep't of Agric.*, the district court held that a plaintiff lacked standing to challenge a federal agency because a state agency would carry out a

6 – PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

program to kill predators even without the involvement of the federal agency. No. 12-cv-00716, 2013 WL 1088700, at *5. On appeal, the Ninth Circuit rejected this reasoning:

> [T]he mere existence of multiple causes of an injury does not defeat redressability, particularly for a procedural injury. So long as a defendant is at least partially causing the alleged injury, a plaintiff may sue that defendant, even if the defendant is just one of multiple causes of the plaintiff's injury.

*WildEarth Guardians*, 795 F.3d at 1157. Further, the court said, in cases where there are multiple causes of injury, so long as the injury could be reduced to some extent, "the relaxed redressability requirement for procedural claims" is met. *Id.* (citing *Mass.*, 549 U.S. at 526). Notably, eliminating "other contributing causes" of injury is not necessary to establish standing. *Id.* (citing *Barnum Timber Co. v. Envt'l Prot. Agency*, 633 F.3d 894, 901 (9th Cir. 2011)).

As for the other cases that the Forest Service cites, *Goat Ranchers* and *Wolf Recovery Foundation*, ECF 83-1 at 7, the Forest Service fails to explain why these outdated cases are relevant after *WildEarth Guardians*. The cases are also distinguishable. Here, Plaintiffs' injury stems not only from wildlife impacts but also from safety risks, so there exists an independent basis for standing here that was not present in those cases. Additionally, those cases involved removing federal government involvement in predator control and inquiring whether the same level of predator control would exist in the absence of federal assistance. Here, by contrast, Plaintiffs are not asking the Forest Service to withdraw from predator control, but instead asking that the federal government regulate and review the environmental impacts of a private predator killing activity on federal lands, as required by agency regulations. Any level of regulation of this activity (including a decision not to permit the contest on federal lands) would help redress Plaintiffs' injuries.

II.   **The Forest Service's failure to require a permit was unlawful.**

    A.   **The killing contest is a group use.**

An agency's interpretation of its own regulation is ordinarily accorded deference, but no deference is warranted if the interpretation is "plainly erroneous or inconsistent with the regulation."

7 – PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

*Auer v. Robbins*, 519 U.S. 452, 461, 462 (1997). The Forest Service's interpretation of "group use" is plainly erroneous and inconsistent with the regulation. A "group use" is "an activity conducted on National Forest System lands that involves a group of 75 or more people, either as participants or spectators." 36 C.F.R. § 251. The Forest Service was aware that the contest could involve upwards of 150 people, AR 421 (application contemplating 150 to 200 participants),[3] and the Forest Service acknowledged that contest activities would occur "on" the Forest, AR 327 (acknowledging contest "activities, both on and off the National Forest"). Failing to show that the number of participants was below the 75+ threshold, and failing to demonstrate that participants would not be "on" the Forest, the Forest Service asserted that the contest was not a "group use" because the participants would not be "congregated in one location." AR 327.

But there is no requirement of "congregation" in the regulation. *See Black v. Arthur*, 201 F.3d 1120, 1122 (9th Cir. 2000) ("group use" regulation does not only apply to groups with "an internal governing structure" because language of regulation does not include such a requirement). Moreover, a requirement of "congregation" would be difficult to administer. Must group participants be within one square mile of each other?  Two? The Forest Service sensibly decided that "a numerical threshold is the fairest and most objective standard" and that the relevant "group" inquiry would be whether 75 or more people arrive on the national forest in connection with an organized event. 60 Fed. Reg. 45,258-01, 45,270. The Forest Service's determination that "group use" permitting does not apply to the killing contest is arbitrary and capricious because it ignores the Forest Service's own numerical threshold for permitting.

Additionally, the Forest Service's rationale that the contest is not a "group use" appears *only* in its letter of January 9, 2015—after the contest occurred on January 2-4, 2015, SOF ¶ 10, and after

---

[3] Contrary to the Forest Service's assertion, ECF 83-1 at 12, the final number of contest participants is irrelevant. IFW's application to the Forest Service was for 150-200 participants, and it was on that basis that the Forest Service determined the event was not a "group use."

8 – PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

this litigation was filed on November 13, 2014. Accordingly, it is a post hoc rationalization designed to defend the Forest Service's past action from attack, and does not deserve deference. *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012).

### B. In the alternative, the killing contest is a commercial use.

A commercial use is "any use or activity on National Forest System lands (a) where an entry or participation fee is charged, or (b) where the primary purpose is the sale of a good or service, and in either case, regardless of whether the use or activity is intended to produce a profit." 36 C.F.R. § 251.51. Here, the agency acknowledged the presence of an entry fee. *See* AR 427 ("The commercial aspect of this event is the payment of a fee . . ."). The only rationale that the Forest Service provided for rejecting the applicability of the "commercial use" category was that the activity would not occur "on" the National Forest.[4] AR 427.

The Forest Service's interpretation is inconsistent with the plain language of the regulation and thus no deference to its interpretation is warranted. *Auer v. Robbins*, 519 U.S. 452, 461, 462 (1997). The regulation cannot be read to allow event organizers to segment activities to avoid permitting. If the regulation required permitting only when an entry fee or cash prize for an activity is collected on Forest lands, that would create a loophole. A range of commercial uses of the Forest—animal, bicycle, motocross, or triathalon races; jeep rallies; dog trials; fishing contests; rendezvous; rodeos; adventure games; concerts—could avoid permitting merely by collecting entry fees off the Forest. The purposes of the regulation, including promoting public safety and protecting Forest resources, would be undermined.

Moreover, it makes no sense to say that activities do not occur "on" the Forest merely because the related commercial transactions occur off the Forest. For example, many national

---

[4] Any other argument is an inappropriate post-hoc rationale that it did not assert during the administrative process. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983).

9 – PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

forests require commercial use permits to be obtained for the gathering of commercial quantities of berries, mushrooms, or other products of the forest. *See, e.g.*, USFS, Olympic National Forest: Forest Products Permits, http://www.fs.usda.gov/main/olympic/passes-permits/forestproducts.[5] This is despite the fact that the related financial transactions of selling the berries or mushrooms occur elsewhere, e.g., at farmers' markets or restaurants. The Forest Service sensibly does not restrict permitting only to berry pickers who also set up carts to sell their berries *in* the Forest.

The Forest Service's response is that the activity occurring on the Forest is "hunting," which is one of the noncommercial recreational activities exempt from permitting. ECF 83-1 at 14 (citing 36 C.F.R. § 251.50). However, when the activities listed in the regulation are converted to "group" or "commercial" events, they do require permitting. *See* ECF 83-10 (letter indicating trapping would not require a permit if noncommercial, but commercial trapping requires application for permit). For example, individual campers do not require a permit, but a group campout does; individual picnickers do not require a permit, but a wedding banquet does; individual fishermen do not require a permit, but a fishing contest does. Likewise, individual hunters do not require a permit, but a hunting contest does.

The agency's interpretation of the "commercial use" provision also conflicts with its prior interpretations of the same provision, so deference is not warranted. *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012).[6] Previously, the Forest Service concluded that carnivore killing contests that charge entry fees *do* require submission of a special use permit application whenever contest hunting will occur on the National Forest. *See* ECF 80-7 (2013 advisory letter from Malheur

---

[5] Plaintiffs respectfully request that the Court take judicial notice of this agency website. *Dent v. Holder*, 627 F.3d 365, 371 (9th Cir. 2010) (caselaw in the circuit "does not prevent us from taking judicial notice of the agency's own records").

[6] *See also Norfolk Southern Ry. Co. v. Shanklin*, 529 U.S. 344, 356 (2000) (withholding deference; agency's interpretation was inconsistent with the regulation and the agency's previous construction of it); *Crown Pacific v. Occupational Safety & Health Review Com'n*, 197 F.3d 1036, 1039 (9th Cir. 1999) (same; plain language compelled an alternative reading).

National Forest); ECF 80-8 (2012 advisory letter from Southwestern Region Regional Office); ECF 80-3 and ECF 80-4 (2013 and 2014 permits for predator hunting event on Hoosier National Forest).[7]

The Forest Service responds by attaching six extra-record documents to its summary judgment briefing that it says are consistent with the Forest Service's determination in this case, ECF 83-5 to ECF 83-10.[8] The juxtaposition of these documents with the documents that Plaintiffs submitted highlights the agency's inconsistency on this point. Furthermore, the documents provided by the Forest Service are distinguishable. The first and second, at ECF 83-5 and ECF 83-6, concern a county-sponsored coyote bounty, which, unlike the killing contest, is not an organized event. The third and fourth, at ECF 83-7 and ECF 83-8, involve a statewide coyote hunt where no specific, identified Forest Service administered lands were proposed for use. The Forest Service reasoned that, without identification of which NFS lands will be used, "there is no way to apply proposal screening criteria." ECF 83-8. The Forest Service explained that such a statewide contest was akin to a "photo or hiking contest" involving an entry fee but not requiring use of National Forest lands. ECF 83-7. The killing contest here is distinguishable because it involves specific Forest Service administered lands. AR 420. The fifth, ECF 83-9, involves a coyote calling contest that did not

---

[7] The Forest Service argues that deference is still appropriate because the inconsistent determinations were made by field or regional offices, and the Forest Service's determination, here, that no permit was required was "ratified by the Chief." ECF 83-1 at 15 (citing AR 327). In support, Defendants cite a 10th Circuit case, *Exxon Corp. v. Lujan*, in which the court found that the presence of a single inconsistent decision made by a regional office of the BLM did not render erratic "the first declaration of national policy by the Department of Interior's Solicitor's Office." 970 F.2d 757, 762 (10th Cir. 1992). This case is distinguishable. Here, the Forest Service has not once, but repeatedly, made inconsistent statements, *see* ECF 80-3, ECF 80-4, ECF 80-7, ECF 80-8. Moreover, the decision "ratified by the Chief" was made after the event occurred, and during active litigation, apparently to respond to and protect the agency from challenges made in litigation, so no deference is warranted. See *supra* at II.A.

[8] If the Forest Service's Motion to Strike Plaintiffs' extra-record documents is granted, these documents (which are apparently intended to "contextualize" Plaintiffs' extra-record documents) should also be stricken.

11 – PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

involve an entry fee; thus, it has no relevance to whether the Forest Service has been consistent in its interpretation of "commercial use." The sixth, ECF 83-10, involves furbearer trapping and merely invites an application if a proponent thinks the use is commercial.[9]

    **C.**    **In the alternative, the killing contest is a "group use" or "recreation event" involving the use of National Forest System roads.**

A special use permit is required for a "noncommercial group use" or a "recreation event" involving the use of National Forest System roads. 36 C.F.R. § 251.50(d)(1). Such a permit is appropriate to provide the public with a market value return for use of Forest roads. Land Uses; Special Uses Requiring Authorization: Final Rule, 69 Fed. Reg. 41,946-01, 41,948 (July 13, 2004). Here, the Court may find either that the killing contest is a "group use" or a "recreation event" involving the use of National Forest System roads for which a special use permit is required. *See* ECF 80-1 at 16. Curiously, the Forest Service neglects to respond to these arguments, other than to state without explanation that "the Derby did not involve a commercial use or recreation event." ECF 83-1 at 13. Without more, the Forest Service's statement lacks support and is insufficient to rebut Plaintiffs' assertions.

    **D.**    **The killing contest is a "special use."**

Even if the Court determines that the killing contest is not a "group use," a "commercial use," or a "group use" or "recreation event" involving the use of National Forest System roads, it should still determine that the killing contest is a "special use" requiring permitting because it is a use of National Forest System lands that does not fall into any of the enumerated exemptions

---

[9] It is ironic that the Forest Service filed a Motion to Strike (ECF 84) Plaintiffs' six extra-record documents (in spite of this Court's standing order that motions to strike in response to a motion for summary judgment are disfavored), and then filed six extra-record documents of its own. Plaintiffs respectfully requested this Court to take judicial notice of its extra-record documents, ECF 80-1 at 3 n. 2, consistent with this Court's proposed procedure in its Order addressing record disputes, ECF 61 at 2. The Forest Service has not explained on what basis its extra-record documents should be considered. ECF 83-1 at 16.

12 – PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

provided by 36 C.F.R. § 251.50. *See* ECF 80-1 at 7. An event need not be a "group use," a "commercial use," or a "group use" or "recreation event" involving the use of National Forest System roads in order to require permitting. Instead, the regulation is structured to require permitting as a default. Thus: "*All* uses of National Forest System lands . . . are designated as 'special uses.'" 36 C.F.R. § 251.50(a) (emphasis added). Section 251.50(c) exempts from the permit requirement "noncommercial recreational activities, such as camping, picnicking, hiking, fishing, boating, hunting, and horseback riding . . . unless the proposed use is a noncommercial group use . . ." 36 C.F.R. § 251.50(c). Similarly, section § 251.50(d) exempts from the permit requirement "[t]ravel on any National Forest System road . . . unless the travel is for the purpose of engaging in a noncommercial group use [or] . . . a recreation event" 36 C.F.R. § 251.50(d). Thus, the permit requirements for "group uses," "commercial uses," or "group uses" or "recreation events" involving the use of National Forest System roads are explicit categories that are set aside from the exemptions in 36 C.F.R. § 251.50(c) and (d). However, these categories do not comprise the whole universe of special uses. Instead, *all* uses are by default special uses if they do not fall into an exemption. The only exemption the Forest Service identified as applicable to the killing contest was the "noncommercial recreational activity" exemption. AR 427.[10] As explained in Plaintiffs' opening brief, ECF 80-1 at 8, the killing contest is not mere hunting but an organized event involving time limits, cash prizes, and hundreds of participants that requires a permit, and thus is more than just a "noncommercial recreational activity."

### III. The Forest Service must conduct NEPA analysis.

If this Court determines that the Forest Service must require a permit for the killing contest, it should require the Forest Service to comply with NEPA. *See* ECF 80-1 at 17-20. "It is clear …

---

[10] Without applying them to the killing contest, the Forest Service also mentioned exemptions for uses with nominal effects on NFS land, and uses that are adequately regulated by State agencies, 36 C.F.R. § 251.50(c).

13 – PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

both from our cases and from the federal regulations … that if a federal permit is a prerequisite for a project with adverse impact on the environment, issuance of that permit *does* constitute a major federal action and the federal agency involved must conduct an EA and possibly an EIS before granting it." *Ramsey v. Cantor*, 96 F.3d 434, 444 (9th Cir. 1996); *see also* 40 C.F.R. § 1501.18 ("Actions include … projects and programs … regulated or approved by federal agencies … includ[ing] actions approved by permit or other regulatory decision….").

The Forest Service's only reply to this argument is that the killing contest is a "minor, short-term" use that should be categorically excluded from NEPA. ECF 83-1 at 17. But this argument actually supports Plaintiffs' argument, as it constitutes the Forest Service's concession that if a permit is required, it must comply with NEPA. *See Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1096 (9th Cir. 2013) ("Application of a categorical exclusion is not an exemption from NEPA; rather, it is a form of NEPA compliance….") (citing 40 C.F.R. § 1508.04); *see also* 40 C.F.R. § 1501.4(a). To be clear, Plaintiffs disagree that this action is subject to a categorical exclusion, but ultimately this is not at issue in this litigation because the Forest Service has not signed a categorical exclusion document related to the killing contest, and as such, there has been no NEPA compliance. As detailed in Plaintiffs' opening brief, such a permit requires at minimum the preparation of an Environmental Assessment, if not a complete Environmental Impact Statement. ECF 80-1 at 18-20. Finally, even if the Court determines that no permit is required for the killing contest, the Forest Service must still comply with NEPA in declining to issue a special use permit. *See id.* at 17-18.

IV.     **The injunctive relief Plaintiffs seek is appropriate.**

Along with their three other requests for relief, Plaintiffs asked the Court to "enjoin the Forest Service from allowing the killing contest on Forest Service lands unless and until a special use permit has been issued and environmental review pursuant to NEPA has been completed." ECF 80-1 at 20. The Forest Service objects to this request on three bases: (1) the APA does not permit

review of discretionary agency enforcement action, ECF 83-1 at 18; (2) a permit may not be required if the Forest Service determines that a future killing contest is adequately regulated by a state agency, *id.* at 19; and (3) injunctive relief is not in the public interest, *id.* at 20.

First, Plaintiffs are not asking the Court to compel the Forest Service to take enforcement action to stop a future killing contest. Rather, Plaintiffs are merely asking that the Forest Service be required to process any special use permit application that it receives consistent with its regulations as guided by this Court. Second, because the killing contest is a group use, the exemption from permitting on the basis that another entity is regulating the contest does not apply. 36 C.F.R. § 251.50(e). Third, Plaintiffs are entitled to injunctive relief. As discussed above, Plaintiffs have suffered irreparable injury that will continue in the future: animals killed during the killing contest. *See Native Ecosystems Council v. U.S. Forest Serv.*, 866 F. Supp. 2d 1209, 1234 (D. Idaho 2012) (environmental injury is, by its nature, irreparable) (quoting *Sierra Club v. Bosworth*, 510 F.3d 1016, 1033-34 (9th Cir. 2007)). Additionally, the injunction is in the public interest, which will best be served by evaluating the impacts of the killing contest on (1) the safety of members of the public who recreate on the Salmon-Challis National Forest and (2) on gray wolves and coyotes. This litigation is not about state regulation of hunting, but rather federal regulation of organized commercial and group activities on public lands. Injunctive relief would further the public interest in safe recreation on public lands and environmental integrity. Importantly, this Court has previously held "ensuring that government agencies comply with the law is a public interest of the 'highest order.'" *Id.* at 1234 (internal quotation omitted).

## CONCLUSION

Based on the foregoing, Plaintiffs' motion for summary judgment should be granted, and the Forest Service's cross-motion for summary judgment should be denied.

Respectfully submitted this 9th day of August, 2016.

/s/ Laura King
Laura King, *pro hac vice*
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
Ph: (406) 204-4852
Fax: (406) 443-6305
king@westernlaw.org

/s/ John R. Mellgren
John R. Mellgren, *pro hac vice*
Western Environmental Law Center
1216 Lincoln Street
Eugene, Oregon 97401
Ph: (541) 359-0990
mellgren@westernlaw.org

/s/ Dana Johnson
Dana Johnson (ISB # 8359)
Law Office of Dana Johnson, PLLC
P.O. Box 9623
Moscow, ID 83843
(208) 310-7003 (phone)
johnsondanam@gmail.com

*Attorneys for Plaintiffs WildEarth Guardians, Cascadia Wildlands, and Kootenai Environmental Alliance*

/s/ Andrea Lynn Santarsiere
Andrea Lynn Santarsiere (ISB # 8818)
Center for Biological Diversity
P.O. Box 469
Victor, ID 83455
Ph: (303) 854-7748
Fax: (208) 787-5857
asantarsiere@biologicaldiversity.org

*Attorney for Plaintiffs Center for Biological Diversity, Western Watersheds Project, and Project Coyote*

CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of August, 2016, I filed a copy of this document electronically through the CM/ECF system, which caused all ECF registered counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

/s/ Laura King
Laura King

17 – PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT