Dana Johnson (ISB # 8359)
Law Office of Dana Johnson, PLLC
P.O. Box 9623
Moscow, ID 83843
Ph: (208) 310-7003
johnsondanam@gmail.com

Laura King, *pro hac vice* (MT Bar # 13574)
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
Ph: (406) 204-4852
king@westernlaw.org

John R. Mellgren, *pro hac vice* (OR Bar # 114620)
Western Environmental Law Center
1216 Lincoln Street
Eugene, Oregon 97401
Ph: (541) 359-0990
mellgren@westernlaw.org

*Attorneys for Plaintiffs WildEarth Guardians, Cascadia Wildlands, and Kootenai Env. Alliance*

Andrea L. Santarsiere (ISB # 8818)
Center for Biological Diversity
P.O. Box 469
Victor, ID 83455
Ph: (303) 854-7748
Fax: (208) 787-5857
asantarsiere@biologicaldiversity.org

*Attorney for Plaintiffs Ctr. for Biological Diversity, W. Watersheds Project, and Project Coyote*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**
**EASTERN DIVISION**

| | |
|---|---|
| WILDEARTH GUARDIANS ET AL.,<br><br>Plaintiffs,<br>v.<br><br>JOE KRAAYENBRINK ET AL.,<br><br>Defendants. | Case No. 4:14-cv-00488-REB<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO THE FOREST SERVICE'S MOTION TO STRIKE** |

Plaintiffs respectfully submit this response in opposition to the Forest Service's Motion to Strike.

**I. The Court can take judicial notice of Plaintiffs' Exhibits A-F because they show inconsistency in the Forest Service's application of its own rules, and therefore inform the amount of deference owed to the Forest Service's decision.**

Under the Federal Rules of Evidence and Ninth Circuit caselaw, the Court can take judicial notice of Plaintiffs' Exhibits A-F. "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The Ninth Circuit has repeatedly recognized that a court may take judicial notice of matters of public record, including agency records, in cases subject to record review. *See Klamath-Siskiyou Wildlands Ctr. v. Gerritsma*, 638 Fed. Appx. 648, 655 n. 4 (9th Cir. 2016) (Bea, J., concurring and dissenting) (judicial notice of BLM-produced maps in an Administrative Procedure Act ("APA") case); *Ctr. for Envtl. Law & Policy v. U.S. Bureau of Reclamation*, 655 F.3d 1000, 1011 n. 5 (9th Cir. 2011) (judicial notice of EIS prepared by defendant agency in an APA case); *Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.*, 625 F.3d 1092, 1112 n.14 (9th Cir. 2008) (judicial notice of BLM documents, including agency guidance and handbooks, in an APA case); *W. Watersheds Project v. Salazar*, 2011 WL 4526746, at * 3 n. 2 (D. Idaho Sept. 28, 2011) (judicial notice of official BLM document in an APA case); *Dent v. Holder*, 627 F.3d 365, 371 (9th Cir. 2010) (judicial notice of agency's records in case being reviewed on administrative record).[1]

---

[1] Although *Dent* did not involve the APA, it is instructive for a court in determining whether it can judicially notice a document in a case that is normally restricted to an administrative record. The Forest Service argues that, in *Dent*, "the court applied a different rule of record review – the rule applicable in [immigration] removal cases[.]" ECF 85-1 at 6. However, the Forest Service does not explain the import of this difference. In fact, the difference is not relevant because the same rationale is at play in both record review rules. *See Lising v. I.N.S.*, 124 F.3d 996, 998 (9th Cir. 1997) (purpose of record review rule in immigration context is to ensure that *outside*

A record of an administrative body is judicially noticeable for its publication and the existence of its content, although not for the truth of disputed matters asserted in the document. *San Luis & Delta-Mendota Water Auth. v. Salazar*, 686 F. Supp. 2d 1026, 1031 (E.D. Cal. 2009); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (citing Fed. R. Evid. 201(b)) (court may take judicial notice of matters of public record, but may not take judicial notice of a fact that is "subject to reasonable dispute"). Accordingly, this Court can take judicial notice of Exhibits A-F for the fact that they exist and that a particular determination was made in each document. The Court may not consider Exhibits A-F for the truth of disputed matters, such as the correct interpretation of Forest Service rules relating to special use permitting. Here, however, Plaintiffs ask the Court to take judicial notice of Exhibits A-F in determining the amount of deference to grant to the Forest Service's interpretation of its own regulations, which is an appropriate use of judicial notice. *See, e.g., San Francisco Baykeeper, Inc. v. Browner*, 147 F. Supp. 2d 991, 1001 (N.D. Cal. 2001), *aff'd sub nom. San Francisco BayKeeper v. Whitman*, 297 F.3d 877 (9th Cir. 2002) (judicial notice of a document offered for its inconsistency with agency report); *see also ONDA v. BLM*, 625 F.3d at 1112 n.14 (judicial notice of agency document demonstrating lack of change in agency position). Exhibits A-F, as well as the Forest Service's Exhibits 1-6 to the Paur Declaration (ECF 83-5 to 83-10), show that the Forest Service has inconsistently interpreted and applied its own regulations regarding Special Use Permits, and therefore the Forest Service is not entitled to deference. *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012) (when the agency's interpretation of its own regulation conflicts with a prior interpretation, there is reason to suspect that the agency's interpretation

---

information is presented only during the course of the administrative proceedings and not offered for the first time before the court; rule does not preclude the court's taking judicial notice of the agency's own records). Here, as in *Dent*, judicial notice is proper.

"does not reflect the agency's fair and considered judgment on the matter in question," and no deference is warranted); *see also Organized Village of Kake v. U.S. Dept. of Ag*., 795 F.3d 956, 971 (9th Cir. 2015) (en banc) (citing *Fox Television Stations, Inc*., 556 U.S. 502, 515 (2009)) (when changing course and adopting a position contradicted by its previous determinations, an agency must supply a reasoned explanation that demonstrates that it believes that the new position is better, that the new position is permissible under the relevant statutes, and that there are good reasons for the new position).

Exhibits A and B (ECF 80-3 and ECF 80-4) constitute the applications, permits, and operating plans for a coyote- and fox-killing contest in Indiana held on February 1-3, 2013 and February 7-9, 2014. These documents are judicially noticeable for the fact that the Forest Service issued permits for coyote- and fox-killing contests that charged an entry fee and involved hunting on national forest land. They are also judicially noticeable for the fact that the Forest Service has, in the past, issued permits with specific terms and conditions that, if applied in this case, might alleviate the types of harms at issue here. These facts demonstrate inconsistency in the Forest Service's application of its rules relating to "commercial uses" and permit terms and conditions. *See* ECF 80-1 at 2-3, 12.

Exhibit C (ECF 80-5) is the permit and operating plan for a club campout and shooting competition sponsored by "Xtreme Predator Callers" held on April 25-27, 2014 in Arizona, and Exhibit D (ECF 80-6) is the permit for the "Cowboy Action Shooting Match" held on September 24, 2014 in Arizona. These documents are judicially noticeable for the fact that the Forest Service has issued permits for group shooting contests held on national forest lands. This fact demonstrates inconsistency in the Forest Service's application of its rules relating to "noncommercial group uses." *See* ECF 80-1 at 2-3.

Exhibit E (ECF 80-7) is a letter from Steven K. Beverlin, Acting Forest Supervisor of the Malheur National Forest, to Duane Freilino, the proponent of the "JMK Coyote Hunt" event scheduled for January 18-19, 2014. In the letter, Mr. Beverlin indicates that if Mr. Freilino anticipates that any activities of the hunt would occur on Forest Service administered lands, the Forest Service would require Mr. Freilino to initiate the process to obtain a Special Use Permit from the Forest Service. Mr. Beverlin reasons: "Since the JMK Coyote Hunt charges entry fees and cash awards are given, this use would be defined as commercial *and* competitive under 36 CFR 251." Exhibit E is judicially noticeable for the existence of its contents, specifically for the fact that Mr. Beverlin determined that a coyote hunt on national forest lands that charges entry fees and involves cash awards would be a "commercial use" under 36 C.F.R. § 251. Plaintiffs provide this letter to demonstrate inconsistency in the Forest Service's interpretation of the "commercial use" provision. *See* ECF 80-1 at 15-16; ECF 88 at 10.

Exhibit F (ECF 80-8) is a letter from Corbin Newman, Regional Forester for the Southwestern Region Regional Office of the U.S. Forest Service, addressed to the proponent of a "statewide competitive recreation event to hunt coyotes on or about November 17, 2012." It indicates that if the event "is conducted on National Forest System lands," it "could meet the definition of recreation event" and "a special use permit may be required." Plaintiffs provide this letter to demonstrate inconsistency in the Forest Service's interpretation of the "recreation event" provision. *See* ECF 80-1 at 15-16; ECF 88 at 10.

As the Forest Service correctly notes, ECF 85-1 at 2, the Court previously denied Plaintiffs' motion to supplement the Administrative Record with Exhibit E (ECF 80-7), the Beverlin letter. *See* ECF 61. The Court, however, contemplated that Plaintiffs might include that document in their argument on summary judgment, and that the Forest Service might counter

with other documents: "If Plaintiffs wish to include it in their argument on summary judgment, then they can make an argument about its relevance and why such documents should be considered under the applicable procedural rules and caselaw. Likewise, the Forest Service can do the same in their response on summary judgment if they wish to 'contextualize' the document." *Id.* at 2. Consistent with this approach identified by the Court, when Plaintiffs included Exhibits A-F with their motion on summary judgment, they made an argument about their relevance and "why such documents should be considered under the applicable procedural rules and caselaw." *See* ECF 80-1 at 3 n. 2. Specifically, Plaintiffs asked that the Court take judicial notice of the Forest Service's own records. The Forest Service, notably, did counter with documents apparently aimed at contextualizing Exhibits A-F in their Cross-Motion for Summary Judgment (ECF 83-1), *see* ECF 83-5 to 83-10, but provided no argument or support for why such documents should be considered "under the applicable procedural rules and caselaw," as ordered by this Court, ECF 61 at 2.

The Court may take judicial notice of Exhibits A-F to Plaintiffs' motion for summary judgment (ECF 80-3 to 80-8) without assessing whether they comply with any of the four exceptions to the record review rule cited by the Forest Service, ECF 85-1 at 2-3, because Plaintiffs are not asking the Court to add these documents to the record or evaluate the documents' contents in ruling on the merits. The rule to which these four exceptions apply is the prohibition on the use of extra-record information "as a new rationalization either for sustaining or attacking the Agency's decision." *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006). The rule and its exceptions are inapplicable here, where the Plaintiffs present Exhibits A-F not to provide new rationalizations attacking the agency's

decision, but instead to shed light on the amount of deference that should be afforded to the Forest Service.

The Forest Service's argument that the Court should strike Exhibits A-F is misplaced because it is based on the false premise that noticing such records would undermine the record review rule. ECF 85-1 at 2-4; *see* 5 U.S.C. § 706 ("In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party . . ."). The purpose of the record review rule is to prevent the court from substituting its judgment for that of the agency: "When a reviewing court considers evidence that was not before the agency, it inevitably leads the reviewing court to substitute its judgment for that of the agency." *Asarco, Inc. v. U.S. Envtl. Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980). However, Plaintiffs are *not* attempting to introduce new evidence that invites the Court to substitute its judgment for that of the Forest Service. An example of such an attempt would be inviting the Court to look at scientific evidence demonstrating a connection between killing contests and predator population declines. In that case, Plaintiffs would be asking the Court to substitute its judgment for that of the agency on a record more expansive than that before the agency when it made its decision. Here, however, Plaintiffs merely ask that the Court acknowledge the existence of documents demonstrating agency inconsistency in permitting events similar to the killing contest at issue in this litigation.

Notably, the Forest Service does not dispute the existence or authenticity of Exhibits A-F. It is the existence and authenticity of Exhibits A-F, not the truth of their contents, that Plaintiffs are asking the Court to notice. Since the Forest Service does not dispute their authenticity or existence, the Forest Service has offered no legitimate basis for opposing the records. The Forest

Service's motion to strike Exhibits A-F to Plaintiffs' summary judgment motion should be denied.

## II. Statements in Plaintiffs' standing declarations demonstrate the elements of standing only, not the merits of the case, and should not be stricken.

Plaintiffs filed the declarations of Margaret Clay, Louise Wagenknecht, Kenneth Cole, Julie Dalsaso, Josh Laughlin, and George Wuerthner *solely* to prove that they have standing in this case, including the elements of injury-in-fact, causation, and redressability. *See* ECF 80-1 at 1 n.1. Under Article III of the U.S. Constitution, Plaintiffs are required to establish standing in order to prosecute their claims on the merits, and federal courts, before resolving such claims, must first ensure that they have jurisdiction. *See Steel Co. v. Citizens for a Better Envt.*, 118 S.Ct. 1003, 1012-16 (1998) (stating that "the requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception'") (citation omitted).

Plaintiffs are therefore entitled to file these declarations to establish their standing, and they are admissible as such. *Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 117 F.3d 1520, 1527-28 (9th Cir. 1997) (holding that Plaintiffs are entitled to submit standing affidavits, and rejecting attempt to strike affidavits); *see also Idaho Conservation League v. U.S. Forest Serv.*, Case No. 1:16-CV-0025-EJL, 2016 WL 3814021, at *6 (D. Idaho July 11, 2016) (same);[2] *Klamath-Siskiyou Wildlands Ctr. v. Bur. of Land Mgmt.*, No. 12-cv-1558, 2014 WL 525116, at *4-5 (D. Or. Feb. 6, 2014) (declining to strike portions of standing declaration as extra-record

[2] Earlier this summer, the Forest Service made an argument to this Court that echoes the argument it makes here: that Plaintiffs' standing declarations contained scientific conclusions and opinions that lacked foundation and therefore should be stricken. *See* Forest Service's Reply in Support of Its Motion to Strike, *Idaho Conservation League v. U.S. Forest Serv.*, Case No. 1:16-CV-0025-EJL, ECF No. 41, at 7-10. For ease of reference, this document is attached as Exhibit 1. This Court summarily rejected that argument. *Idaho Conservation League*, 2016 WL 3814021, at *6.

evidence when used solely to establish standing); *Envtl. Prot. Info. Ctr. v. Blackwell*, 389 F. Supp. 2d 1174, 1220-21 (N.D. Cal. 2004) (same).

At the summary judgment stage, plaintiffs are required to "set forth by affidavit or other evidence specific facts" to establish standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quotations and citations omitted). Specifically, a declarant must demonstrate "reasonable concerns about the effects of . . . [the agency action on his or her] recreational, aesthetic, and economic interests." *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 183-84 (2000). The facts set forth by affidavit by a plaintiff at the summary judgment stage to support standing "will be taken to be true" for purposes of the summary judgment motion. *Lujan*, 504 U.S. at 561. Later, those facts may be tested if controverted. *Id.*

Here, Plaintiffs' declarants submitted declarations demonstrating their reasonable concerns that they have suffered and will continue to suffer injury to their recreational, scientific, aesthetic, and spiritual interests as a result of the wildlife killing contests. These concerns are supported by expressions of personal feelings and examples of personal experience, in compliance with the personal knowledge requirement of Fed. R. Evid. 602 and the requirements for opinion testimony by lay witnesses of Fed. R. Evid. 701.[3]

The personal knowledge requirement for declarations is not a high bar. For example, "[p]ersonal knowledge . . . is not strictly limited to activities in which the declarant has personally participated[, but] can come from review of the contents of files and records."

---

[3] The Forest Service also objects to several statements as hearsay. Hearsay is an out-of-court statement offered for the truth of the matter asserted. Fed. R. Evid. 801. The statements objected to are not hearsay. Instead, they are offered for the limited purpose of showing that declarants have read a particular document or consulted a particular source and on the basis of that document or source have formed a certain belief or feel a certain way (in demonstration of an interest in wolves or a reasonable concern about wolves, for example). The documents or sources themselves are not offered "for their truth."

*Washington Cent. R. Co. v. Nat'l Mediation Bd.*, 830 F. Supp. 1343, 1353 (E.D. Wash. 1993). Additionally, the personal knowledge requirement for a declaration can be met by inference. *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) (citing *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir.1990)). And opinion testimony that is "expert-like" is acceptable in standing declarations, as long as the court limits its review of the testimony to its relevance to standing. *See Blackwell*, 389 F.Supp.2d at 1220.

The Forest Service has moved to strike sections of Plaintiffs' standing declarations that appropriately use personal knowledge to explain how the Plaintiffs' members' interests in the wildlife of the Salmon-Challis National Forest and the Forest itself have been and will continue to be harmed by the Forest Service's decision to not require a special use permit and not comply with the National Environmental Policy Act. *See, e.g.*, ECF 80-9 (Clay Decl.) ¶¶ 10-12, ECF 80-10 (Wagenknecht Decl.) ¶ 26, ECF 80-11 (Cole Decl.) ¶¶ 45-50, ECF 80-13 (Laughlin Decl.) ¶¶ 14, 17, ECF 80-14 (Wuerthner Decl.) ¶¶ 34-39 (explaining why declarants reasonably believe the killing contest will reduce their chance of seeing wolves and coyotes in the wild); ECF 80-10 (Wagenknecht Decl.) ¶¶ 19, 21, ECF 80-12 (Dalsaso Decl.) ¶¶ 10-11 (explaining why declarants reasonably fear for their safety and the safety of their pets during a killing contest). The Forest Service has also moved to strike sections of Plaintiffs' standing declarations that appropriately use personal knowledge to explain how their injuries can be redressed by a favorable decision. *See* ECF 80-10 (Wagenknecht Decl.) ¶ 27-29, ECF 80-11 (Cole Decl.) ¶ 52, ECF 80-12 (Dalsaso Decl.) ¶ 13, ECF 80-14 (Wuerthner Decl.) ¶ 41.

The Forest Service's objections to the declarations are baseless. For example, the Forest Service objects to this paragraph of Louise Wagenknecht's declaration as lacking foundation and relying on hearsay:

> Killing wolves and coyotes is controversial. My husband and I raised sheep for 15 years. By using Great Pyrenees guard dogs, we experienced no losses from wolves or coyotes, and we never killed coyotes. I read studies by researchers such as Dr. Robert Crabtree about coyote population dynamics in the Yellowstone region, and I became convinced that killing them is counterproductive. Most of our sheep-raising neighbors had no guard dogs, and often brought in Wildlife Services and private contractors to preemptively kill coyotes before lambing/calving season. We noticed that after such episodes, our guard dogs barked more at night and were observed chasing more coyotes in the daytime than before the killings. In effect, when resident coyotes were killed, others moved in to claim their territory, and our dogs were forced to educate a whole new group of coyotes.

ECF 80-10 at 3. The Forest Service does not specify which statements lack foundation and which rely on hearsay. Ultimately, neither objection has merit. The above paragraph establishes that in Ms. Wagenknecht's experience as a rancher, the killing of resident coyotes has in the past increased conflict with her sheep. [4] In support of this point, Ms. Wagenknecht describes episodes of increased conflict after coyote killing by Wildlife Services. She also says that her reading of scientific studies on the topic convinced her that killing coyotes is counterproductive. This information is within Ms. Wagenknecht's personal knowledge because it is derived from personal experience. The mention of the scientific studies, if those are the target of the hearsay objection, does not amount to hearsay because the studies are not offered "for the truth of the matter asserted" (i.e. that killing coyotes is counterproductive) but instead to demonstrate Ms. Wagenknecht's reasonable *concern* that killing coyotes is counterproductive.

The Forest Service also objects to the following paragraph from Ms. Wagenknecht's declaration, asserting that it lacks foundation and improperly offers expert opinion, *see* ECF 85-2 at 2:

> If such killing contests continue on BLM and Forest Service lands, especially

[4] Importantly, Ms. Wageknecht's declaration also states that she is "personally aware of the matters" contained in her declaration and that "if called as a witness [she] could truthfully testify thereto." ECF 80-10 at 2 ¶ 1.

> without any permitting or environmental review, I believe it will threaten the long-term survival of wolves and harm my ability to view wolves and signs of wolves. I believe that wolves will be harmed by this event not only through direct killing during the event but also through the event's ability to recruit more people, including children, to a worldview of disrespect towards and hatred of wolves. By celebrating cruelty towards wolves and coyotes, this event threatens wolves year-round and into the future, not just during the days of the event. It builds social and political momentum against wolves, which threatens their continued presence on the landscape. Anti-wolf sentiment endangers wolves in a real way and therefore harms my interest in viewing wolves and knowing they are on the landscape.

ECF 80-10 at 7-8 ¶ 26. But again, this paragraph explicitly outlines Ms. Wagenknecht's "reasonable concerns" about the effects of the killing contest on wolf populations. She has well-founded concerns that if wolves are killed, her interests in viewing wolves and their sign on the Salmon-Challis National Forest will be harmed. *Id*. This statement meets the Supreme Court's requirements that a standing declarant articulate such "reasonable concerns" about the effects of the underlying agency action on the declarant's interests. *Laidlaw,* 528 U.S. at 183-84; *see also Nat. Res. Def. Council v. U.S. Envtl. Prot. Agency*, 542 F.3d 1235, 1245 (9th Cir. 2008) ("[T]he members' statements that their use of specific waterways has been diminished due to their concerns about discharge from a particular source . . . are sufficient to establish injury in fact."); *Covington v. Jefferson County*, 358 F.3d 626, 653 (9th Cir. 2004) ("[S]ubjective fear of river pollution alone is enough for injury in fact.") (Gould, J., concurring).

Plaintiffs' declarations are not provided as expert testimony relevant to the merits of the agency's actions in this case. Instead, they are offered as personal statements of belief identifying particular concerns. Whether declarants' concerns are "reasonable" is a question for this Court under *Laidlaw*. The evidence supplied by Plaintiffs' members is sufficient and relevant—being grounded in personal experience and, in some instances, on personal reading or study that has shaped Plaintiffs' belief—to support a finding that they are more than interested bystanders, therefore supporting Article III standing.

## CONCLUSION

Based on the foregoing, the Forest Service's motion to strike should be denied.

Respectfully submitted this 16th day of August.

*/s/ Laura King*
Laura King, *pro hac vice*
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
Ph: (406) 204-4852
Fax: (406) 443-6305
king@westernlaw.org

*/s/ John R. Mellgren*
John R. Mellgren, *pro hac vice*
Western Environmental Law Center
1216 Lincoln Street
Eugene, Oregon 97401
Ph: (541) 359-0990
mellgren@westernlaw.org

*/s/ Dana Johnson*
Dana Johnson (ISB # 8359)
Law Office of Dana Johnson, PLLC
P.O. Box 9623
Moscow, ID 83843
(208) 310-7003 (phone)
johnsondanam@gmail.com

*Attorneys for Plaintiffs WildEarth Guardians, Cascadia Wildlands, and Kootenai Environmental Alliance*

*/s/ Andrea Lynn Santarsiere*
Andrea Lynn Santarsiere (ISB # 8818)
Center for Biological Diversity
P.O. Box 469
Victor, ID 83455
Ph: (303) 854-7748
Fax: (208) 787-5857
asantarsiere@biologicaldiversity.org

*Attorney for Plaintiffs Center for Biological Diversity, Western Watersheds Project, and Project Coyote*

CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of August, 2016, I filed a copy of this document electronically through the CM/ECF system, which caused all ECF registered counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

/s/ Laura King
Laura King