WENDY J. OLSON, ID STATE BAR NO. 7634
UNITED STATES ATTORNEY
**CHRISTINE G. ENGLAND, CA STATE BAR NO. 261501**
**ASSISTANT UNITED STATES ATTORNEY**
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1414
Email: Christine.England@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILDEARTH GUARDIANS, CASCADIA WILDLANDS, BOULDER-WHITE CLOUDS COUNCIL, KOOTENAI ENVIRONMENTAL ALLIANCE, PREDATOR DEFENSE, CENTER FOR BIOLOGICAL DIVERSITY, WESTERN WATERSHEDS PROJECT AND PROJECT COYOTE,<br><br>Plaintiffs,<br><br>v.<br><br>JOE KRAAYENBRINK, in his official capacity; UNITED STATES BUREAU OF LAND MANAGEMENT, a federal agency; CHARLES A. MARK, in his official capacity; and UNITED STATES FOREST SERVICE, a federal agency,<br><br>Defendants. | Case No. 4:14-CV-00488-REB<br><br>**THE FOREST SERVICE'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT** |

**THE FOREST SERVICE'S REPLY IN SUPPORT OF
ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

Table of Contents

I. Plaintiffs lack standing. ................................................................................................ 1

    A. Because Plaintiffs cannot prove a reasonable likelihood of future injury, they do not have standing to seek prospective relief. ......................................................... 2

    B. Plaintiffs have not proved concrete injury, traceable to the Forest Service, that would be redressed by a favorable decision. ......................................................... 3

II. The Forest Service reasonably interpreted its regulations. ................................................. 6

    A. The Derbies were not "commercial uses," "recreation events," or "group uses" under Forest Service regulations. ........................................................................... 7

    B. The Forest Service's reasonable interpretation is entitled to deference. ................ 8

III. This Court should not review this discretionary agency action and criminalize otherwise legal conduct. ...................................................................................................... 9

IV. Plaintiffs' NEPA claim fails because there was no major federal action. ........................ 10

**THE FOREST SERVICE'S REPLY IN SUPPORT OF
ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

This Court should refuse Plaintiffs' request to impose their desired interpretation of the Secretary of Agriculture's regulations not only on the Forest Service, but also on the public. As explained in the Forest Service's opening brief, the Forest Service is entitled to deference to its reasonable interpretation of its regulations. But there is more at stake here than deference to the Forest Service's reasonable interpretation of its regulations to administer the National Forest. Permit requirements imposed by Forest Service regulations are enforced by *criminal* sanctions. Thus the Forest Service's interpretation does not merely determine how its regulations apply to the National Forest, but the circumstances under which persons, who are not parties to this lawsuit, may be held criminally liable for failing to obtain a permit from the Forest Service. Plaintiffs request for an injunction directing the Forest Service to administer this enforcement power should be denied.

Not only do Plaintiffs seek inappropriate relief under the APA, but also they seek relief that they do not have standing to seek – Plaintiffs cannot show any risk of imminent future injury, let alone a certain risk. The Court should deny Plaintiffs' motion for summary judgment because they lack standing, the Forest Service has reasonably interpreted its own regulations to determine that the Derbies did not require permits, and the relief Plaintiffs seek is not justiciable.

## I. PLAINTIFFS LACK STANDING.

Plaintiffs must establish standing for *each form of relief sought*.[1] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). That is, Plaintiffs must establish that they *have suffered* redressable injury in order to assert their claim asking the Court

---

[1] Plaintiffs contend that the Forest Service has not challenged Plaintiffs' organizational standing (Pls.' Reply in Support of Mot. for Summ. J., ECF No. 88 ("Pls.' Reply"), at n.1). As Plaintiffs correctly acknowledge, to establish standing, an organization must prove that its members have standing to sue in their own right. *Id.* Here, none of the Plaintiffs has proved that their individual members have standing. (*See* Forest Service's Mem. in Support of Mot. for Summ. J., ECF No. 83-1 ("FS Opening Br."), at 5.)

**THE FOREST SERVICE'S REPLY IN SUPPORT OF
ITS CROSS-MOTION FOR SUMMARY JUDGMENT - 1**

to declare that the "Forest Service violated NEPA" and that they *will suffer* (or are continuing to suffer) redressable injury in order to assert their claims asking the Court to "[d]eclare that the Forest Service *is in violation* of the [APA]," "[o]rder the Forest Service to comply with its own regulations," and "[e]njoin the Forest Service from allowing the annual carnivore killing contest." (Second Am. Compl., ECF No. 21-1 ("Compl.") at 30.) Plaintiffs fail on both counts.

    **A.    Because Plaintiffs cannot prove a reasonable likelihood of future injury, they do not have standing to seek prospective relief.**

Plaintiffs cannot prove imminent future injury because Idaho for Wildlife has no plans to hold a future derby. (Declaration of Steve Alder, ECF No. 83-3, ¶¶ 11-12.) This Court should "decline to abandon [its] usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors" and should hold that Plaintiffs do not have standing to seek prospective relief. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1150 (2013).

Plaintiffs argue that "Plaintiffs still face imminent future injury" because "another derby *may* take place." (Pls.' Reply at 5 (emphasis added).) But "threatened injury must *be certainly impending* to constitute injury in fact[;] allegations of possible future injury are not sufficient" to establish standing. *Clapper*, 133 S. Ct. at 1147 (emphasis added). The fact that another derby *may* take place does not satisfy Article III's standing requirement of certainly impending future injury.

Plaintiffs also argue that their "procedural injuries . . . continue to occur." (Pls.' Reply at 4.) Yet, Plaintiffs fail to identify any procedural injuries that are continuing. While Plaintiffs argue that "Ms. Wagenknecht *has suffered* procedural injury," (*id.*) they do not explain how any Plaintiff *continues to* suffer that injury. Nor can they. Past exposure to illegal conduct, without any "continuing, present adverse effects," is not enough to support injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

**THE FOREST SERVICE'S REPLY IN SUPPORT OF
ITS CROSS-MOTION FOR SUMMARY JUDGMENT - 2**

Lastly, Plaintiffs argue that they have proved standing because, at the time they filed their lawsuit, (1) "they faced imminent future injury from the 2015 [Derby]" and (2) "there was no indication that the contest would not reoccur." (Pls.' Reply at 4-5.) But even if Plaintiffs had standing to seek an injunction for the 2015 Derby (a claim that would now be moot), that does not confer upon them standing to seek an injunction for uncertain future derbies. "A plaintiff who has standing to seek damages for a past injury, or injunctive relief for an ongoing injury, does not necessarily have standing to seek prospective relief." *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010). And even if they correctly assert that "there was no indication that the contest would not reoccur," (Pls.' Reply at 4-5) that does not prove that the injury is "certainly impending." *See Clapper*, 133 S. Ct. at 1147. Plaintiffs have not met their burden to prove that they will suffer imminent future injury absent this Court's intervention.

### B. Plaintiffs have not proved concrete injury, traceable to the Forest Service, that would be redressed by a favorable decision.

Plaintiffs contend that their "procedural" injury sufficiently establishes that they have suffered injury. However, procedural injury alone is not enough. Plaintiffs must prove that they have suffered some concrete injury that is traceable to the Forest Service and that would be redressed by a favorable decision. "A procedural right *in vacuo* – is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). While the redressability and causation requirements are "relaxed" for procedural injury, they are "not toothless." *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1227, 1229 (9th Cir. 2008). Plaintiffs do not meet even this low bar.

Plaintiff WWP offers a second declaration of Louise Wagenknecht (ECF No. 88-2) in an attempt to show concrete injury. Ms. Wagenknecht alleges that she has suffered two injuries as a result of the 2013 and 2015 Derbies: (1) the loss of individual wolves and coyotes that she will no longer have the opportunity to view; and (2) her choice not to recreate on the Salmon-Challis

**THE FOREST SERVICE'S REPLY IN SUPPORT OF
ITS CROSS-MOTION FOR SUMMARY JUDGMENT - 3**

National Forest during the 2013 and 2015 Derbies due to her safety concerns for herself and her pets. (Pls.' Reply at 2-3.) As explained in the Forest Service's opening brief, Ms. Wagenknecht's fears for her safety are not well founded and appear to be based entirely upon speculation.[2] FS Opening Br. at 8-10; *see also WildEarth Guardians v. Mark*, No. 13-CV-00533-CWD, 2013 WL 6842771, *4 (D. Idaho Dec. 27, 2013) ("*Wolf Derby I*"). Furthermore, no individual wolves were killed in the 2013 or 2015 Derbies. Assuming Ms. Wagenknecht's lost opportunity to view individual coyotes could establish that she suffered concrete injury,[3] she cannot show that her injury was caused by the Forest Service or would be redressed by a favorable decision.

Plaintiffs' alleged past injury is not redressable by this Court. Even if the Court were to set aside the Forest Service's determination not to require a permit for the 2013 or 2015 Derby that would not redress the harm asserted because the 2013 and 2015 Derbies have already occurred, allegedly without proper procedure. *See Salmon Spawning*, 545 F.3d 1220 at 1227.

---

[2]  For the reasons stated in the Forest Service's Motion to Strike (ECF No. 85-1), several statements offered in Ms. Wagenknecht's Second Declaration are not admissible under the Federal Rules of Evidence. The Forest Service objects to Paragraphs 4 and 8-12 because they lack foundation and offer improper expert testimony. *See* FED. R. EVID. 602, 701. The Forest Service also objects to the hearsay offered in Paragraph 6. *See* FED. R. EVID. 801.

[3]  WWP (through Ms. Wagenknecht) is the only Plaintiff to allege this particular injury. If this case sought only injunctive relief, one Plaintiff's standing may suffice to establish the case and controversy required by Article III. *See Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 523 (9th Cir. 2009) ("in an injunctive case this court need not address standing of each plaintiff if it concludes that one plaintiff has standing"). However, because Plaintiffs here also seek attorney fees pursuant to the Equal Access to Justice Act (*see, e.g.,* Compl. ¶ 119), this Court can and should determine whether each Plaintiff has standing. *See We Are Am./Somos Am., Coal. of Arizona v. Maricopa Cty. Bd. of Supervisors*, 809 F. Supp. 2d 1084, 1091 (D. Ariz. 2011) ("in a multiple plaintiff case" the court may consider "the standing of the other plaintiffs even if it finds that one plaintiff has standing"); *W. Watersheds Project v. Bureau of Land Mgmt.*, 971 F. Supp. 2d 957, 967-68 (E.D. Cal. 2013) (citing *id.*); *see also Am. Civil Liberties Union of Idaho, Inc. v. City of Boise*, 998 F. Supp. 2d 908, 913 (D. Idaho 2014) (explaining that "each plaintiff" must establish standing). If certain Plaintiffs do not have standing, they should not be entitled to recover attorney fees, should they prevail.

Nothing the Court can do now can remedy the procedural injury asserted.

Likewise, Plaintiffs cannot show how their alleged procedural right could protect them from future injury because the hunting of wolves and the derby itself (on State and private land) may go forward with or without Forest Service involvement. Plaintiffs argue that the existence of multiple causes of injury does not defeat standing. (Pls.' Reply at 7.) But Plaintiffs have not shown that the Forest Service's determination that a permit was not required is one of multiple causes of injury. Plaintiffs' alleged injuries would exist regardless of any Forest Service inaction: Plaintiffs would still suffer their alleged injury because the State of Idaho continues to allow hunting of wolves and coyotes and the derby organizer could still hold the event on state and private land. *See also Washington Envtl. Council v. Bellon*, 732 F.3d 1131, 1142 (9th Cir. 2013) ("[W]here the causal chain involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries, the causal chain is too weak to support standing.") (internal quotation marks and citation omitted). Plaintiffs have offered no evidence that if the Forest Service required Idaho for Wildlife to obtain a permit, that could stop a future derby or even reduce the number of wolves and coyotes killed.

Plaintiffs' reliance on *WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148 (9th Cir. 2015) is misplaced. There, the plaintiff challenged a predator control program, *jointly implemented* by federal and state agencies. *Id.* at 1151-52.[4] The Ninth Circuit found that plaintiff had standing to challenge the joint program because the predator control program could

---

[4] In its opening brief, the Forest Service mistakenly cited the district court opinion in *WildEarth Guardians v. U.S. Dep't of Agric.*, No. 12-CV-00716, WL 1088700, at *5 (D. Nev. Mar. 14, 2013). (FS Opening Br. at 7.) That case was overruled by *WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148. Although the Ninth Circuit's ruling in *WildEarth Guardians*, 795 F.3d 1148, did not expressly overrule the remaining district and circuit court cases cited at page 7 of the Forest Service's opening brief (*Goat Ranchers of Or. v. Williams*, 379 F. Appx. 662, 663 (9th Cir. 2010) and *Recovery Fndtn. v. U.S. Forest Serv.*, 09-CV-00686-BLW, ECF No. 90 at 203 (D. Idaho Jan. 21, 2012)), those cases are no longer persuasive authority.

**THE FOREST SERVICE'S REPLY IN SUPPORT OF
ITS CROSS-MOTION FOR SUMMARY JUDGMENT - 5**

be influenced by federal action. *WildEarth Guardians*, 795 F.3d at 1156. Here, Plaintiffs do not challenge a jointly implemented program. Instead, hunting is *exclusively* regulated by the State. To challenge that, Plaintiffs would have to sue the State.

II.     **THE FOREST SERVICE REASONABLY INTERPRETED ITS REGULATIONS.**

Plaintiffs repeat their opening brief's arguments: that the 2013 and 2015 Derbies were a "noncommercial group use" or a "commercial use" or a "recreation event," and thus required a permit. But for any of those permitting conditions to apply, the event must occur *on* the National Forest. *See* 36 C.F.R. § 251.51 (defining "group use, "commercial use" and "recreation event" to include only activities *on* National Forest land). Forest Supervisor Charles Mark concluded that the 2013 and 2015 Derbies did not occur on the National Forest and so a special use permit was not required. The events themselves were held in Salmon and hunting could occur anywhere. FS Opening Br. at 11-12; FSAR000190; FSAR000198; *see also Wolf Derby I*, at *4 ("[T]o compete for prizes, the derby participants must return to Salmon to claim them. None of the judging, awarding of prizes, or viewing of the animals will be on USFS lands.").

Plaintiffs contend that the Forest Service's determination that the Derbies did not occur on National Forest land improperly segments the events in order to avoid permitting. (Pls.' Reply at 9.) Not so. The contest itself did not occur on the National Forest: no judging, awarding of prizes, viewing of animals or payment of fees occurred on the National Forest. And hunting may or may not have occurred on the National Forest. Participants could hunt on private, state, or National Forest land. Further, Plaintiffs have offered no evidence that participants in the 2013 or 2015 Derbies hunted on the National Forest.

Plaintiffs' comparisons to fishing contests and mushroom gathering are inapposite. Unlike a fishing contest, in which participants are restricted to "fishing in a specific body of water within a National Forest," participants in the Derbies were not "invited to or paying an

**THE FOREST SERVICE'S REPLY IN SUPPORT OF
ITS CROSS-MOTION FOR SUMMARY JUDGMENT - 6**

entry for an organized event that [took] place on the National Forest." (FSAR00012.) For commercial mushroom gathering, a permit is required because "the primary purpose [of the activity] is the sale of a good." *See* 36 C.F.R. § 251.51. Where the sale of mushrooms occurs is irrelevant to the applicable definition of commercial use, in such an instance.

> **A. The Derbies were not "commercial uses," "recreation events," or "group uses" under Forest Service regulations.**

Even if the Court concludes that because hunting related to the contest may have occurred on the National Forest, the *event itself* occurred on the National Forest and thus is subject to Forest Service regulations, it should deny Plaintiffs' motion for summary judgment because the regulations still would not require a permit. The 2013 and 2015 Derbies were not "commercial uses," "recreation events," or "noncommercial group uses."

The Derbies were neither "commercial uses" nor "recreation events" because no fee was charged. 36 C.F.R. § 251.51 (defining "commercial use" and "recreation event" as activities where "an entry or participation fee is charged"); FSAR000071, FSAR000050.

Nor were the Derbies "group uses."[5] "Group use" is defined as "an activity conducted on National Forest System lands that involves a *group* of 75 or more people." 36 C.F.R. § 251.51 (emphasis added). The term "'group' refers to some collection of individual people." *Black v. Arthur*, 18 F. Supp. 2d 1127, 1132 (D. Or. 1998), *aff'd on other grounds*, 201 F.3d 1120 (9th Cir. 2000); *see also United States v. Masel*, 54 F. Supp. 2d 903, 913 (W.D. Wis. 1999) (describing group as the "congregation of large numbers of people in the forest). Plaintiffs contend that the 2013 and 2015 Derbies were "group uses," just like a group campout or a wedding banquet. (Pls.' Reply at 10.) But Plaintiffs' chosen examples highlight the flaw in their argument: unlike

---

[5] Plaintiffs incorrectly assert that the first time the Forest Service explained that the Derbies were not "group use" was on January 9, 2015. The Forest Service explained why the 2013 Derby was not a group use on December 26, 2013. (FSAR000159-160.)

**THE FOREST SERVICE'S REPLY IN SUPPORT OF
ITS CROSS-MOTION FOR SUMMARY JUDGMENT - 7**

a group campout or a wedding banquet, where large numbers of people congregate in a specific area, the Derbies involved no such gathering. As in *Wolf Derby I*, Plaintiffs have offered no evidence that there was "a concentration of hunters any greater over this two-day period than experienced at other peak time periods during the hunting season." *Wolf Derby I*, at *4. The Derbies were not "group uses."

> **B.** **The Forest Service's reasonable interpretation is entitled to deference.**

An agency's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation or there is other reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *Lezama-Garcia v. Holder*, 666 F.3d 518, 525 (9th Cir. 2011); *see also Christopher v. SmithKline Beecham Corp.*, 132 S.Ct. 2156 (2012) (deference may not be warranted where the interpretation "does not reflect the agency's fair and considered judgment on the matter in question," which "*might occur* when the agency's interpretation conflicts with a prior interpretation . . . or when it appears that the interpretation is nothing more than a convenient litigation position") (internal citations and quotation marks omitted) (emphasis added). The agency's interpretation "need only be [] reasonable, not the best or most reasonable." *See River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1070 (9th Cir. 2010).

Plaintiffs argue that the Forest Service's interpretation here is not entitled to deference under *Christopher v. SmithKline*. But there is no reason to suspect that the Forest Service's interpretation here "does not reflect the agency's fair and considered judgment": the Forest Service advanced this interpretation before the 2013 Derby, defended the same interpretation in *Wolf Derby I*, advanced the same interpretation before the 2015 Derby, and defends the same interpretation now. Furthermore, the Chief of the Forest Service concurred in that interpretation (FSAR000327) and that interpretation has been applied across the National Forest. (*See* FS

**THE FOREST SERVICE'S REPLY IN SUPPORT OF
ITS CROSS-MOTION FOR SUMMARY JUDGMENT - 8**

Opening Br. at 14-16.) The Forest Service's interpretation here is entitled to deference.

### III. THIS COURT SHOULD NOT REVIEW THIS DISCRETIONARY AGENCY ACTION AND CRIMINALIZE OTHERWISE LEGAL CONDUCT.

Not only is the Forest Service's interpretation of the regulations here reasonable, it is constitutionally required. As the Forest Service explained in its opening brief, Plaintiffs' request for injunctive relief is not appropriate because the APA does not permit review of discretionary agency enforcement action. (*See* FS Opening Br. at 18-19.) The dangers in such review are particularly pertinent here, where Plaintiffs seek to *criminalize* otherwise legal conduct. Because of the potential criminal sanctions for violation of the regulations, the Forest Service may not interpret its regulations to prohibit conduct that is not clearly proscribed by the plain language of the regulations and the Court should not direct such an interpretation.

Violation of a Forest Service regulation is a Class B misdemeanor under 18 U.S.C. § 3559(a)(7), punishable by not more than six months' imprisonment, a fine of not more than $5,000 under 18 U.S.C. § 3571(b)(6), or both. Under the due process clause of the Fifth Amendment, criminal statutes must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (citations omitted). In this case, the regulations would have to clearly inform the public that they must obtain permits from the Forest Service if there is any chance that they might use the game they take while hunting on the National Forest to enter a contest that takes place outside the National Forest, or else incur criminal penalties. And a party who seeks to sponsor a contest that does not take place on a National Forest, where spectators assemble and prizes are given for game taken by hunters, irrespective of where that game is taken, would have to be similarly apprised that a Forest Service permit is required to organize and sponsor that contest, and that they could be convicted of a crime for failing to obtain such a permit.

**THE FOREST SERVICE'S REPLY IN SUPPORT OF
ITS CROSS-MOTION FOR SUMMARY JUDGMENT - 9**

Plaintiffs argue that they are not seeking to compel agency enforcement action, but "merely asking that the Forest Service be required to process any special use permit application . . . *as guided by this Court*." (Pls.' Reply at 15.) Plaintiffs' new characterization of their request for relief is inconsistent with both their motion for summary judgment and their complaint. In those documents, they ask the Court to "enjoin the Forest Service from *allowing* the killing contest on National Forest land unless and until a special use permit has been issued." (*See* Mem. in Support of Mot. for Summ. J., ECF No. 80-1, at 20; Compl. at 30.) Even the revised relief requested by Plaintiffs in their reply is not permissible – it still asks this Court to direct agency enforcement action, by criminalizing otherwise legal conduct. The Court should decline that request.

IV. **PLAINTIFFS' NEPA CLAIM FAILS BECAUSE THERE WAS NO MAJOR FEDERAL ACTION.**

Because the Forest Service's determination not to require a permit is not reviewable under the APA (as discussed above and in the Forest Service's opening brief), it is not a "major federal action." 40 C.F.R. § 1508.18 ("Actions include the circumstance where . . . failure to act is reviewable by courts . . . under the Administrative Procedure Act."). *Alaska v. Andrus*, 591 F.2d 537 (9th Cir. 1979) is particularly on point. There, the Ninth Circuit found that "the Secretary [of Interior's] nonexercise of any authorities and duties he may possess in the field of wildlife management . . . .[to] allow the State of Alaska to manage its own wildlife . . . does not trigger the NEPA requirement that an environmental impact statement be prepared." *Id* .at 541-42. Here, too, the Forest Service's nonuse of any power it may have does not trigger NEPA.

\* \* \* \*

Plaintiffs' motion for summary judgment should be denied and the Forest Service's cross-motion should be granted. Judicial intervention is not appropriate here and, even if it was, the Forest Service's interpretation of its own regulations was not arbitrary and capricious.

**THE FOREST SERVICE'S REPLY IN SUPPORT OF
ITS CROSS-MOTION FOR SUMMARY JUDGMENT - 10**

Respectfully submitted this 23rd day of August, 2016.

        WENDY J. OLSON
        UNITED STATES ATTORNEY
        By


        */s/ Christine Gealy England*
        CHRISTINE G. ENGLAND
        Assistant United States Attorney

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 23, 2016, the foregoing **THE FOREST SERVICE'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of the Court using the CM/ECF system and a copy was served via electronic mail to the following person(s):

Dana Johnson
Law Office of Dana Johnson, PLLC
P.O. Box 9623
Moscow, ID  83843
johnsondana@gmail.com

Laura King
Western Environmental Law Center
103 Reeder's Alley
Helena, MT  59601
king@westernlaw.org

John R. Mellgren
Western Environmental Law Center
1216 Lincoln Street
Eugene, OR  97401
mellgren@westernlaw.org

Andrea Lynn Santarsiere
Center for Biological Diversity
P.O. Box 469
Victor, ID  83455
asantarsiere@biologicaldiversity.org

/s/ *Christine Gealy England*
Christine G. England

**THE FOREST SERVICE'S REPLY IN SUPPORT OF
ITS CROSS-MOTION FOR SUMMARY JUDGMENT - 12**