WENDY J. OLSON, ID STATE BAR NO. 7634
UNITED STATES ATTORNEY
**CHRISTINE G. ENGLAND, CA STATE BAR NO. 261501**
**ASSISTANT UNITED STATES ATTORNEY**
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1414
Email:  Christine.England@usdoj.gov

Attorneys for the United States of America


UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILDEARTH GUARDIANS, CASCADIA WILDLANDS, KOOTENAI ENVIRONMENTAL ALLIANCE, CENTER FOR BIOLOGICAL DIVERSITY, WESTERN WATERSHEDS PROJECT AND PROJECT COYOTE,<br><br>         Plaintiffs,<br><br>    v.<br><br>JOE KRAAYENBRINK, in his official capacity; UNITED STATES BUREAU OF LAND MANAGEMENT, a federal agency; CHARLES A. MARK, in his official capacity; and UNITED STATES FOREST SERVICE, a federal agency,<br><br>         Defendants. | Case No. 4:14-CV-00488-REB<br><br>**THE FOREST SERVICE'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE** |

**THE FOREST SERVICE'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE**

## INTRODUCTION

This Court should strike Plaintiffs' extra-record exhibits because they are not subject to judicial notice or any exception to the rule limiting this case to record review.  Plaintiffs cannot show that the "facts" for which they seek judicial notice are not subject to reasonable dispute. Nor do the exhibits provide sufficient context for the Court to determine any such "facts."  Any consideration of these exhibits would impermissibly expand the Court's narrow scope of review beyond the record.

The Court should also strike the statements from Plaintiffs' declarations identified in Appendix A to the Forest Service's Motion to Strike (ECF No. 85-2) ("Appendix A") and in Note 2 of the Forest Service's Reply in Support of its Motion for Summary Judgment (ECF No. 92).  These statements are inadmissible under the Federal Rules of Evidence.

## ARGUMENT

I.      **PLAINTIFFS' EXTRA-RECORD EXHIBITS SHOULD BE EXCLUDED.**

A.      **Plaintiffs fail to identify any exception to the rule limiting this case to record review and so their exhibits should be excluded.**

A court's review of agency action is confined to the administrative record, unless one of four narrow exceptions apply.  (Forest Service Mem. in Support of Mot. to Strike, ECF No. 85-1, ("Mot. to Strike") at 2-3.)  Plaintiffs concede that the Court may not consider their extra-record exhibits to evaluate their claim on the merits, but argue that the Court may consider their exhibits to determine "the amount of deference that should be afforded to the Forest Service."  (*See* Plaintiffs' Response to Mot. To Strike, ECF No. 90, ("Pls.' Resp.") at 6-7.)

Plaintiffs offer no authority for their contention that the Court may consider extra-record evidence to determine the amount of deference due to the Forest Service's interpretation of its own regulations and the Forest Service is aware of none.  *See, e.g.*, *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agr.*, 499 F.3d 1108, 1117 (9th

**THE FOREST SERVICE'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE - 1**

Cir. 2007) ("At the district court level, extra-record evidence is admissible if it fits into one of

four 'narrow' exceptions."); *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1130

(9th Cir. 2012) ("A reviewing court may consider extra-record materials only:  (1) if necessary to

determine whether the agency has considered all relevant factors and explained its decision, (2)

when the agency has relied on documents not in the record, (3) when supplementing the record is

necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a

showing of agency bad faith.").  The Court should decline to create a new exception here.

Plaintiffs' extra-record exhibits highlight the need for the rule limiting this Court's

review to the record.  If the Court could take judicial notice of any agency record, regardless of

its inclusion in the administrative record for the decision at issue, that would circumvent the rule

limiting this case to record review.  Plaintiffs could theoretically ask the Court to consider *any*

agency document.  As shown in more detail below, Plaintiffs' cherry-picked exhibits do not

provide the context to allow the Court to determine whether those exhibits are consistent with the

Forest Service's determination in the 2013 and 2015 Derbies and so cannot provide the basis for

showing an inconsistency.  It is not possible to determine, for example, whether the events

described in Exhibits A and B (ECF Nos. 80-3 and 80-4) are similar to the 2013 and 2015

Derbies, without the full records of those decisions.  Exhibit F provides an even more stark

example because Plaintiffs' Exhibit F (ECF No. 80-8) was later clarified in a document not

submitted by Plaintiffs.  (*See* Declaration of Kenneth Paur, ECF No. 83-4 ("Paur Decl."), Ex. 3.)

Even if the Court were to create a fifth exception to the record review rule for documents

that purport to "shed light on the amount of deference" due to an agency, Plaintiffs' exhibits

should not be admitted because the Forest Service's interpretation of its own regulations is still

entitled to deference.  In *Christopher v. SmithKline Beecham Corp*., 132 S.Ct. 2156 (2012), the

case upon which Plaintiffs rely, the Court determined that deference may not be warranted where

**THE FOREST SERVICE'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE - 2**

the interpretation "does not reflect the agency's fair and considered judgment on the matter in question," which "*might occur* when the agency's interpretation conflicts with a prior interpretation . . . or when it appears that the interpretation is nothing more than a convenient litigation position."  *Id.* at 2166.  None of these concerns are present here.  The Forest Service has consistently advanced the same interpretation: before the 2013 Derby, in *Wolf Derby I*, before the 2015 Derby, and in this litigation.  Furthermore, the *Chief* of the Forest Service concurred in that interpretation (FSAR000327) and that interpretation has been applied across the National Forest (*see* Forest Service's Mem. in Support of Summ. J., ECF No. 83-1, at 15-16).  Thus, the same interpretation is shared by the Salmon-Challis National Forest (FSAR000006, FSAR000198), other Forests (Paur Decl. Exs. 1, 5, 6), other Regions (Paur Decl. Ex. 3), the Chief of the Forest Service (FSAR000327, Paur Decl. Ex. 4), and the Forest Service's Director of Wildlife (Paur Decl. Ex. 2).  The Court should decline Plaintiffs' invitation to deny deference to the Forest Service's consistent interpretation of its regulations based on one potentially inconsistent interpretation by a single Forest.

> **B.     Plaintiffs' extra record exhibits do not show that the Forest Service has taken inconsistent positions.**

Plaintiffs ask this Court to consider six extra-record documents that allegedly show that the other Forests have taken positions inconsistent with the Forest Service's determination that no permit was required for the 2013 and 2015 Derbies.  But, as the administrative record and Plaintiffs' extra-record documents show, determining whether a permit is required for a particular event is a fact-specific inquiry.  The documents submitted by Plaintiffs do not establish that the Forest Service has acted inconsistently and so should be excluded on that basis as well.

As the Forest Service explained in its Memorandum in Support of its Cross Motion for Summary Judgment, extra-record exhibits A and B address a coyote and fox hunting competition in Indiana.  But Exhibits A and B do not show whether the event was similar to the 2013 and

**THE FOREST SERVICE'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE - 3**

2015 Derbies in several key respects:  First, it is unknown whether the Indiana competition

occurred only on National Forest land, or included private and state land, like the 2013 and 2015

Derbies.  Second, we cannot tell whether the promoters invited participants to hunt on National

Forest land, while in the 2013 and 2015 Derbies the promoters offered no such invitation.  Third,

the permits do not explain whether a fee was charged to hunt on National Forest land, while in

the 2013 and 2015 Derbies, no fee was charged at all, let alone to hunt on National Forest land.

Fourth, without the complete record from another Forest, the permits provided by Plaintiffs do

not establish whether the Forest Service provided additional or clarifying guidance.

Extra-record exhibits C and D (ECF Nos. 80-5 and 80-6) do not demonstrate that

deference is not warranted in this case because they are plainly consistent with the Forest

Service's determination that the 2013 and 2015 Derbies were not "noncommercial group uses."

Exhibit C, relating to the" Extreme Predator Callers Club Campout and Shooting Competition"

in Arizona, shows that the shooting contest was set to take place in a concentrated area, "the pit."

(*See* Exhibit C at 6 (showing map of area).)  Exhibit D, relating to the "Cowboy Action Shooting

Match" in Arizona, likewise geographically limited the event to five shooting bays.  (Exhibit D

at 1.)  As reflected by the permits, such a noncommercial group use requires the need to manage

environmental impacts resulting from concentrated events (*e.g.*, sanitation hazards, potable

drinking water).  (*See* Exhibit C at 8 (providing operating plan, including toilets, trash collection,

and tarps for collection of shells; Exhibit D at 3 (providing for toilets, trash collection, group

camping).)  Because the 2013 and 2015 Derbies did not involve a concentrated use, the Forest

Service's determination here is entirely consistent with the Forest Service's determination to

issue permits for the shooting competitions reflected in Exhibits C and D.

Extra-record exhibits E and F stray even further afield.  Neither involves any agency

determination.  Exhibit E is a letter from the Malheur National Forest Supervisor and Exhibit F is

**THE FOREST SERVICE'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE - 4**

a letter from the Region 3 Regional Forester in New Mexico.  Neither of these letters determine whether a permit is required for a particular event.  Instead, Exhibit E directs the proponent to submit an application and Exhibit F explains that a permit *may* be required.  This is the same process followed by the Forest Service for the 2013 and 2015 Derbies:  the permit application described the event so that the Forest Service could determine if a permit was required.

       **C.**      **Plaintiffs' extra-record exhibits are not judicially noticeable.**

Assuming judicial notice is available in record review cases (which, as we discuss below, it is not), under Federal Rule of Evidence 201, a court "may judicially notice a fact that is *not subject to reasonable dispute* because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  While the *existence* of Plaintiffs' extra-record exhibits may be judicially noticeable, their existence is not relevant without the purported facts that Plaintiffs seek to admit.  Here, all of the "facts" that Plaintiffs seek to judicially notice are subject to reasonable dispute.

From Exhibits A and B, Plaintiffs contend that the following "fact" is judicially noticeable: "that the Forest Service issued permits for coyote- and fox-killing contests that charged an entry fee and involved hunting on national forest land.  (Pls.' Resp. at 4.)[1]  But Exhibits A and B do not show that the only circumstances leading the Forest Service to issue a permit were the entry fee and hunting on National Forest land.  Because the Court does not have the complete administrative records supporting Exhibits A and B, we simply cannot determine what facts led the Forest Service to issue a permit.

---

[1]      Plaintiffs also contend that the Court may take judicial notice from these permits:  "that the Forest Service has, in the past, issued permits with specific terms and conditions that, if applied to this case, might alleviate the types of harm at issue here."  (Pls.' Resp. at 4.)  The Forest Service has issued permits in the past.  The Forest Service disputes, however, that the conditions contained in Exhibits A or B would alleviate Plaintiffs' claimed harms of the lost opportunity to view wolves or coyotes or their fear of recreating during the event.

**THE FOREST SERVICE'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE - 5**

From Exhibits C and D, Plaintiffs contend that the Court may take judicial notice that the "Forest Service has issued permits for group shooting contests on National Forest lands." (Pls.' Resp. at 4.)  As an initial matter, this "fact" is irrelevant because Exhibits C and D involved concentrated use.  *See* FED. R. EVID. 401.  Furthermore, the Forest Service disputes that the "fact" that led the Forest Service to issue permits in Exhibits C and D was that they involved "shooting contests."

From Exhibit E, Plaintiffs ask the Court to take judicial notice of the "fact" that "Mr. Breverlin [the acting Forest Supervisor for the Malheur National Forest] determined that a coyote hunt on national forest lands that charges entry fees and involves cash awards would be a 'commercial use' under 36 C.F.R. § 251." (Pls.' Resp. at 5.)  Again, the Forest Service disputes this "fact."  In context, Mr. Breverlin explained to contest organizers that *if* "you anticipate any activities on Forest Service administered lands[,] we would require you to initiate the process to obtain a Special Use Permit (SUP)."  This does not reflect Mr. Breverlin's conclusion that any hypothetical predator hunting event would require a permit.

From Exhibit F, Plaintiffs contend that the Court may judicially notice the "fact" that *if* an event "is conducted on National Forest System lands, it could meet the definition of recreation event and a special use permit may be required." (Pls.' Resp. at 5.)  While, an event that is conducted on National Forest System lands *could* meet the definition of recreation event, more is required.  *See* 36 C.F.R. § 251.51 (defining "recreation event" as a "recreational activity conducted on National Forest System lands for which an entry or participation fee is charged").  Moreover, Plaintiffs' request for judicial notice of Exhibit F is particularly problematic since the Regional Forester subsequently clarified the Forest Service's interpretation, explaining:

> [B]y definition in 36 CFR 251.51, a recreation event is "a recreational activity conducted on National Forest System lands for which an entry or participation fee is charged"; however, your assumption that this activity will take place on

**THE FOREST SERVICE'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE - 6**

National Forest System (NFS) lands is in itself not sufficient to reach a determination that a special use permit is needed.

An entry fee for a state-wide event does not mean a special use authorization is required.  The event must actually be on NFS lands to be considered an activity, subject to the special use regulations found in 36 CFR 251. These regulations are specific to NFS lands, not lands of other jurisdictions or ownership, such as state, private, or other federal lands. State-wide contests that do not require participants to use NFS land are not considered recreation events. (Paur Decl., Ex. 3.)[2]

Simply stated, Plaintiffs have not identified any "facts" that are judicially noticeable contained in Exhibits A-F.

### D.    Plaintiffs' collected cases do not establish that judicial notice is appropriate in record review cases.

Plaintiffs cite four cases to support their contention that the "Ninth Circuit has repeatedly recognized that a court may take judicial notice of matters of public record, including agency records, in cases subject to record review."  (Pls.' Resp. at 2.)  But it does not appear that the issue was contested in any of these cases and so the Ninth Circuit did not explain why judicial notice was appropriate.  In the cases cited in Forest Service's Motion to Strike, in contrast, the courts concluded, on contested records, that judicial notice was not appropriate in record review cases.  *See Bear Valley Mutual Water Co. v. Jewell*, 790 F.3d 977, 995 n.2 (9th Cir. 2015); *Silver State Land, LLC v. Beaudreau*, 59 F. Supp. 3d 158 (D.D.C. 2014).

In *Bear Valley*, Plaintiff Center for Biological Diversity opposed an amicus's request for judicial notice on the ground that it violated the rule limiting the case to record review.  The

---

[2]    Plaintiffs feign surprise that the Forest Service would move to strike their extra-record exhibits, but then submit its own extra-record evidence.  To be clear, the Forest Service takes the position that it is not appropriate for the Court to consider any extra-record evidence in this record review case.  (*See* Forest Service Mem. in Support of its Mot. for Summ. J., ECF No. 83-1 at 14.)  However, if the Court elects to consider extra-record evidence offered by Plaintiffs, it should likewise consider the extra-record evidence offered by the Forest Service, which shows that not only has the Forest Service consistently interpreted its regulations, but also that the highest officials within the Forest Service share that interpretation.  (*Id*. at 15 and n.14.)

**THE FOREST SERVICE'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE - 7**

Ninth Circuit denied the judicial notice request on the same grounds.  (Mot. to Strike at 4 and n.1.)  In *Silver State*, the court found that "[j]udicial notice is typically an inadequate mechanism for a court to consider extra-record evidence in reviewing an agency action" and declined to take judicial notice of extra-record documents offered by plaintiffs.  *Silver State*, 59 F. Supp. 3d at 172 (internal quotation marks and citation omitted).

Beyond not being contested, Plaintiffs' cases are further distinguishable:

In *Klamath-Siskiyou Wildlands Ctr. v. Gerritsma*, 638 F. App'x 648, 655 (9th Cir. 2016), the relevant maps were not included in the *excerpts* of record, so the concurring justice noted that he took judicial notice of the publicly available maps.  Not only were these maps not subject to reasonable dispute, but it is also not clear that they were, in fact, extra-record documents.

In *Ctr. for Envtl. Law & Policy v. U.S. Bureau of Reclamation*, 655 F.3d 1000 (9th Cir. 2011), the court granted the plaintiff's "uncontested motion to take judicial notice" of a draft EIS that was published during the appeal.  The existence of the published draft was not subject to dispute.  The court took judicial notice of the draft EIS to confirm that the Government had kept a promise made in its opening brief.

The Forest Service addressed *Oregon Nat. Desert Ass'n v. Bureau of Land Mgmt.*, 625 F.3d 1092 (9th Cir. 2010) in its Motion to Strike at page 7.  In short, there, the court provided no explanation for its decision and the judicially noticed documents are easily distinguishable from the extra-record exhibits here.

Finally, *Dent v. Holder*, 627 F.3d 365 (9th Cir. 2010) is inapposite because it did not apply the Administrative Procedure Act.  (*See* Mot. to Strike at 6.)  Plaintiffs argue that this difference is irrelevant.  (Pls.' Resp. at n.1.)  But immigration removal cases, like *Dent*, apply a different record review rule (and exceptions to that rule) because they are not governed by the APA.  In removal cases, "[a court] may review out-of-record evidence only where (1) the Board [of

**THE FOREST SERVICE'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE - 8**

Immigration Appeals] considers the evidence; or (2) the Board abuses its discretion by failing to consider such evidence upon motion of an applicant." *Dent*, 627 F.3d at 371.  In *Dent*, the court found that the rule should not be interpreted "absurdly," to exclude evidence that the government failed to provide to the immigration applicant.  Here, Plaintiffs have failed to show how compliance with the rule limiting this case to record review (and related exceptions) would be absurd.

Judicial notice does not supply an exception to the rule limiting this case to record review.

## II.   PLAINTIFFS' STANDING DECLARATIONS ARE NOT EXEMPT FROM THE FEDERAL RULES OF EVIDENCE.

The Forest Service does not contest that Plaintiffs may file declarations in support of their standing.  However, the statements in those declarations must be admissible under the Federal Rules of Evidence.  Under Federal Rule of Civil Procedure 56(c)(4), a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be *admissible in evidence*, and show that the . . . declarant is competent to testify on the matters stated."  Many of the statements offered by Plaintiffs' declarants fail this test.

Plaintiffs argue that the personal knowledge requirement is "not a high bar."  Even so, "[t]he matters must be known to the declarant personally, as distinguished from matters of opinion or hearsay."  *Boyd v. City of Oakland*, 458 F. Supp. 2d 1015, 1023 (N.D. Cal. 2006) (citing *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995)).  As reflected in the Forest Service's Appendix A, many of the statements offered by Plaintiffs' declarants are inadmissible opinions or hearsay.

Plaintiffs contend that expert-like testimony may be considered in support of Plaintiffs' standing (Pls.' Resp. at 10.), but Plaintiffs do not explain why such testimony is admissible under the Federal Rules of Evidence.  The opinions identified in Appendix A offer improper expert testimony because they appear to be "based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  FED. R. EVID. 701.  That is, lay witnesses, including

**THE FOREST SERVICE'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE - 9**

Plaintiffs' declarants, may not offer an opinion that is based on "scientific, technical, or other specialized knowledge." In *Envtl. Prot. Info. Ctr. v. Blackwell*, 389 F. Supp. 2d 1174 (N.D. Cal. 2004), Plaintiffs' cited case, the court considered expert-like testimony for standing purposes. But that case does not address whether such opinions are admissible under the Federal Rules of Evidence. *Id.* at 1221.

The examples cited in Plaintiffs' response are illustrative. In Paragraph 7, Ms. Wagenknecht offers the impermissible opinion that "when resident coyotes were killed, others moved in to claim their territory, and our dogs were forced to educate a whole new group of coyotes." (Wagenknecht Decl., ECF No. 80-10, ¶ 7.) Such an opinion appears to be based on scientific or technical knowledge. Likewise, Ms. Wagenknecht opines that "killing contests . . . build[] social and political momentum against wolves, which threatens their continued presence on the landscape. Anti-wolf sentiment endangers wolves in a real way." (*Id.* ¶ 26.) But Ms. Wagenknecht is again offering bare opinion that is not "rationally based on [her] perception," but requires "scientific, technical, or other specialized knowledge," which she does not have. *See*. FED. R. EVID. 701. Such opinions are not admissible.

The Court should strike the statements identified in Appendix A and Note 2 of the Forest Service's Reply in Support of its Motion for Summary Judgment because they are inadmissible under the Federal Rules of Evidence.

## <u>CONCLUSION</u>

The Court should grant the Forest Service's motion to strike. Plaintiffs' extra-record exhibits should not be considered in this APA case, because the Court's review is limited to the administrative record. Furthermore, the paragraphs in Plaintiffs' declarations that are not admissible under the Federal Rules of Evidence should also be stricken.

**THE FOREST SERVICE'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE - 10**

Respectfully submitted this 2nd day of September, 2016.

WENDY J. OLSON
UNITED STATES ATTORNEY
By


/s/ Christine G. England
CHRISTINE G. ENGLAND
Assistant United States Attorney

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 2, 2016, the foregoing **THE FOREST SERVICE'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE** was electronically filed with the Clerk of the Court using the CM/ECF system and a copy was served via electronic mail to the following person(s):

Dana Johnson
Law Office of Dana Johnson, PLLC
P.O. Box 9623
Moscow, ID  83843
johnsondana@gmail.com

Laura King
Western Environmental Law Center
103 Reeder's Alley
Helena, MT  59601
king@westernlaw.org

John R. Mellgren
Western Environmental Law Center
1216 Lincoln Street
Eugene, OR  97401
mellgren@westernlaw.org

Andrea Lynn Santarsiere
Center for Biological Diversity
P.O. Box 469
Victor, ID  83455
asantarsiere@biologicaldiversity.org


/s/ Danielle Narkin
Legal Administrative Specialist

**THE FOREST SERVICE'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE - 12**